No. 29,598.

THE EMERSON-BRANTINGHAM IMPLEMENT COMPANY, *Appellant*, v. THE A. C. PENNIMAN & SON HARDWARE COMPANY, *Appellee*.

(294 Pac. 883.)

Opinion filed January 10, 1931.

*C. E. Freeman* and *Walter T. Griffin*, both of Topeka, for the appellant.
*A. M. Keene*, of Fort Scott, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for a balance alleged to be due plaintiff from defendant upon an account for farm implements and accessories sold by plaintiff to defendant under a written contract and order. Defendant answered that its contract with plaintiff was that the goods were to be shipped to it on consignment, to be settled for as sold, and that in the respect the contract did not so provide it should be reformed, on the ground of mutual mistake and fraud. On this question issues were joined. There was a trial to the court. It was held defendant had the burden of proof. At the close of its evidence plaintiff demurred thereto, which demurrer was overruled. Plaintiff offered no evidence and the trial court reformed the written contract to accord with the contention of defendant. Plaintiff filed no motion for a new trial, but has appealed from the order of the court overruling its demurrer to defendant's evidence and from the judgment of the court.

Appellee raises the point that to review a ruling on a demurrer to evidence a motion for a new trial is necessary, citing *Coy v. Railway Co.*, 69 Kan. 321, 76 Pac. 844, and earlier cases. The rule stated in those authorities is no longer the law of this state. The statute now in force provides for a demurrer to evidence (R. S. 60-2909, clause 3) and makes the ruling of the court on a demurrer an appealable order (R. S. 60-3302). Under these statutes the court has repeatedly held that an order sustaining or overruling a demurrer, either to a pleading or to evidence, may be reviewed without a motion for a new trial having been filed. (*Schubach v. Hammer*, 117 Kan. 615, 282 Pac. 1041, and cases cited, page 617.)

Passing now to the question whether plaintiff's demurrer should have been sustained. The evidence was substantially as follows: The defendant, a corporation, managed by A. C. Penniman and sons, was engaged in the retail hardware business at Fort Scott. Prior to its transactions with plaintiff it was not engaged in the retail farm implement business. One day in November, 1927, agents of plaintiff called on defendant and solicited its managers to handle plaintiff's line of farm implements. Representatives of defendant discussed the matter with plaintiff's agents, stated they were not familiar with the farm implement business, and did not care to invest any money in the purchase of implements. They suggested

they might handle them on consignment. Plaintiff's agents stated, in substance, that plaintiff did not ordinarily make that kind of contracts, but might do so in this case because of defendant's established business and standing if such terms were not made known to other dealers. It was agreed between the parties that plaintiff would ship its farm implements to defendant on consignment, to be paid for by defendant as sold; that defendant would have no financial investment in the farm implements except for freight, unloading charges and storage. Defendant was not sufficiently familiar with the retail farm implement business to select a carload of farm implements to be shipped, and plaintiff's agents made up a list which they thought would be suitable for retail sale in that territory and prepared a contract for defendant to execute. Defendant's representatives examined the contract, which appeared to be the ordinary sales contract which plaintiff made with its dealers, and declined to sign it, stating that was not in accordance with their agreement, which was that the goods were to be sent on consignment and to be settled for as sold. Plaintiff's agents then stated they would take the contract to plaintiff's Kansas City office and have it modified, or something added to it, which would accord with the agreement of the parties. Plaintiff's agents returned to defendant's place of business a week or so later with the contract originally prepared by them, to which had been added what is spoken of as a "rider." Defendant's representatives examined that and questioned whether its wording was such as to accord in full with their contract and agreement. Plaintiff's agents represented that the proper meaning and interpretation of the rider conformed to the agreement of the parties. After some further discussion the contract was signed with the rider attached, plaintiff's agents representing, and defendant's representatives understanding, that the correct interpretation of the rider conformed with their agreement. The carload of implements was shipped in due course, and from time to time defendant sold some of the implements and promptly reported the sales and settled for those sold. On three different occasions plaintiff directed defendant to send a part of the merchandise to some other place. A plow, listed at $151.50, was ordered sent to one place; another plow of the same kind, but without wheels, was ordered sent to another place, and other implements were ordered sent to a third place. Defendant complied with these

requests. Some of the implements were on hand and unsold in October, 1928, when a representative of plaintiff called on defendant and asked defendant to settle for all the goods on hand and unsold. Defendant insisted that was not their agreement, and offered to let plaintiff take the goods back, or to retain them and settle for them as sold. This was not satisfactory to plaintiff, and this action was brought for the value of those goods.

Appellant contends that the contract executed by the parties, with the rider thereon, was a sales contract and not a consignment contract, and argues that if defendant misinterpreted the meaning and language of the rider, that such misinterpretation constituted a mistake of law as distinct from a mistake of fact, and that the contract should not be reformed for that reason. This contention requires us to examine the language of the rider, which is as follows:

"SEASONABLE SAMPLES.

"These seasonable sample machines are to be settled for as sold either by note due at net due date following date of sale or in cash less the cash discount applying at date of sale.

"Seasonable samples remaining on hand unsold at end of season can be settled for by note on terms of the following period, or reshipped at option of Emerson-Brantingham Implement Company."

The term "seasonable samples," used in the rider, while not important here, did not clearly express the nature of the merchandise, which merchandise consisted of the farm implements manufactured by plaintiff and sold through its dealers. By designating the implements shipped defendant as "seasonable samples" plaintiff would be in a position to point out a distinction should other dealers learn of the contract it made with defendant. The first paragraph of this rider clearly states the substance of a consignment contract as distinct from a contract of sale. The second paragraph of the rider deals with the implements on hand unsold at the end of the season and provides that such implements "can be settled for by note . . . or reshipped at option" of plaintiff. It should be noted that there is nothing in this language which requires that the unsold implements on hand at the end of the season should be settled for in any way. As far as the option of plaintiff to have them shipped is concerned, it had that option all the time, and exercised it at will. The wording is not that the implements on hand at the end of the season *must* be settled for by note or reshipped. We see

nothing in the language used which negatives the theory that defendant had the option to settle for implements unsold at the end of the season, or retain them on consignment, unless plaintiff ordered them shipped elsewhere. By the first paragraph of the rider the goods were simply consigned by plaintiff to defendant to be sold and settled for as sold. The only change in that plan made by the second paragraph of the rider was to enable defendant to settle for the implements on hand and unsold at the end of the season. If defendant did not care to do that there is nothing in the language of the rider which required it to do that. It could still retain the implements in accordance with the first paragraph of the rider, or plaintiff, at its option, could have them reshipped.

This interpretation of the rider accords with the agreement of the parties, as the evidence clearly shows, and accords with the interpretation given it by plaintiff's agents when the representatives of defendant questioned the meaning of the language used. Given this interpretation, the contract did not need to be reformed in order to conform to the agreement of the parties. The fact that the trial court, out of an abundance of caution, did reform it is a matter of which the plaintiff cannot complain.

With this view of the correct interpretation of the rider in question it is unnecessary to cite and analyze, in this opinion, authorities relied upon by appellant. We find nothing in any of them contrary to the view herein expressed.

The judgment of the court below is affirmed.