No. 30,121.

CORA B. COLLINS, *Appellee*, v. THE STATE HIGHWAY COMMISSION, *Appellant*.

(5 P. 2d 1106.)

Opinion filed December 12, 1931.

*Roland Boynton,* attorney-general, *Wint Smith,* assistant attorney-general, and *Louis R. Gates,* of Kansas City, for the appellant.

*William E. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover damages from the state highway commission for personal injuries sustained by plaintiff when an automobile in which she was riding, and which was driven by her husband, was overturned by a defect in a state highway. Plaintiff recovered, but on her motion a new trial was granted. Defendant appeals.

Before discussing the accident it will be necessary to determine just what is before the court for consideration.

At the trial defendant demurred to plaintiff's evidence, and the demurrer was overruled. At the close of all the evidence defendant moved for judgment in its favor, and the motion was denied. The jury returned a verdict in favor of plaintiff for $1,500, and re-returned a number of special findings of fact. Judgment in favor of plaintiff was immediately entered on the general verdict. In due

time plaintiff filed a motion for new trial on all statutory grounds. The motion was allowed generally. Defendant contends that no ground specified in the motion was well taken, and consequently that the motion was erroneously allowed. Evidently the court was not satisfied with the jury's work and, under the well-understood rule, the order granting a new trial will not be disturbed.

Defendant filed a motion for new trial, and then withdrew the motion. Defendant filed a motion to set aside one finding of fact, and filed a motion for judgment notwithstanding the general verdict, on the ground the findings of fact warranted judgment in favor of defendant. The order granting a new trial disposed of the findings of fact precisely as it disposed of the general verdict, and there are now no findings of fact for this court to consider.

Defendant appealed from the judgment. As indicated, the judgment was rendered on return of the verdict. Finality of the judgment depended on what the court did with the post-judgment motions, and when plaintiff's motion for new trial was allowed the judgment went the way of the general verdict and the special findings.

There remain for consideration the demurrer to plaintiff's evidence and the motion for judgment at the conclusion of the evidence. If there was anything to submit to the jury the demurrer was properly overruled and the motion was properly denied.

The accident occurred in Leavenworth county, on highway U. S. 40—a state highway—at a point between Lawrence and Tonganoxie, about 250 or 300 feet south of the intersection of U. S. 40 and an east-and-west township road. The highway is forty feet wide. In the center is a concrete slab eighteen feet wide. Next to the slab on each side is a dirt shoulder approximately five feet wide. Beyond the shoulders are drainage areas and ditches. At the intersection the direction of the highway is approximately northeast and southwest. At the intersection is a culvert. Two ditches, one from the northeast along the highway and one from the west, meet at a culvert on the west side of U. S. 40. Originally this culvert was four or five feet deep. It filled up until the waterway was not sufficient to carry water from the northeast and from the west, and the water ran across the slab into the ditch on the east side of the highway. The accident occurred on May 19, 1929. The winter before the accident occurred a large truck went off the slab on the east side and cut a rut in the shoulder next to the slab. Water running over the slab cut the rut deeper. The engineer of design in charge of surface

plans and design for the state highway commission produced the blue print of the plans for the construction of the highway at the place of the accident, and gave testimony showing it was practically impossible for water to run over the slab. Mr. Bert Harmon, however, lived 800 feet east of the intersection, on the township road. He was a farmer, and handled cattle, and was over the highway almost every day. He was examined and cross-examined at length, and testified in part as follows:

"The truck went into this ditch and cut it out first. Then, as this water came over this slab from this bridge here, it kept cutting it out. Somebody opened a drainage ditch, off to the east, to let this water out here; and the more this water poured over this pavement, the deeper it cut this. The ditch adjacent to the slab on May 1, 1929, was from six to twelve inches deep any place along there. It was a bad hole; I know that. The ditch was made there some time during the winter. . . . When I say 'this hole' I mean that rut along the pavement there. . . . The rut along this slab was from fifty to seventy-five feet. This rut extends quite a ways on each side of the place where the accident happened. This little ditch that was dug across the shoulder there was some place around the center of the rut. . . .

"Q. Could it be seen plainly from the intersection? . . . Could you see it? A. Oh, yes."

The state highway commission took over the highway on April 1, 1929. W. W. Simmonds was district supervisor of the district, and William M. Jones was foreman of the section of the highway, which included the place of accident. Jones' duty as foreman was to patrol the highway, make repairs, cut weeds, etc. He was familiar with the place, had received reports that water was overflowing the road several times before the accident, and Mr. Harmon had complained to him the culvert was full of mud. Jones repaired the road after the accident. He testified, in part, as follows:

"This rut or hole, that is adjacent to the slab, is about 250 feet south of the intersection of this dirt road that extends east and west and U. S. highway No. 40. The rut adjacent to the slab is around eighty or ninety feet long.

"There is a culvert on each side of this slab that extends across or underneath the dirt road, extending east and west. There are two ditches, one coming from the west and the other from the north, and they meet at the end of the culvert on the west side of the slab. About the 15th or 20th of April I talked to Simmonds about dredging this culvert and taking the dirt out of it. The water could not flow underneath it. It was full of mud—silt. There was an opening of from six inches to a foot. On the uphill side it was probably six inches, and on the downhill side, where the water flowed through, was probably a foot. That was the only clearance that water had to get through the culvert. The water was unable to go through the culvert, and I saw it one

time when the water went plumb over the slab. The water running over the slab went over that portion where the rut was, and would dig out and make the rut deeper. The rut had been there so long that they had dug little laterals out there to keep the water from standing next to the slab. I am talking about the rut about 250 or 300 feet south of the intersection. That is the only bad rut we had along there at that time. The rut was there when I went to work there April 1, 1929, and existed until I repaired it after the car turned over. . . .

"The deepest place in the rut is from twelve to fourteen inches deep. The deepest part of the rut would be in the middle of it. There had been several cars off in there. I had been up there every day prior to the accident."

Plaintiff's husband, B. R. Collins, visited the place of accident a few days after the accident occurred, and testified the rut was next to the slab, was eighteen to twenty inches wide, and was eighty or ninety feet long.

On Sunday, May 19, 1929, plaintiff, her husband, her brother, and her nephew went from Kansas City to Iola, in Mr. Collins' car. Returning they took dinner in the evening in Lawrence. Leaving Lawrence it was cloudy, it commenced to rain, and the rain increased until the accident occurred some thirty minutes later. Mr. Collins, who is a driver of long experience, was driving the car, and Mrs. Collins sat in the front seat at his right. The other occupants of the car were in the rear seat. The car was a Studebaker straight-eight sedan, and weighed 4,100 pounds. It was equipped with standard lights casting a bright light 500 feet ahead, and when they were "dimmed" they cast a bright light for thirty-five or fifty feet, and a good light for seventy-five or eighty feet ahead. The description of the lights shows the word "dimmed" is a misnomer, surviving use of old-style "dimmers." The lights were turned on when the party left Lawrence. Traffic was heavy, and to avoid blinding approaching automobile drivers the short-range lights were used. The car was equipped with a windshield wiper in front of the driver, which was in action when the accident occurred. When the accident occurred the car was moving northward at a rate of about thirty miles per hour.

Near the place of accident Mr. Collins met a number of cars near together, going southward. At the rear of the line was a car which turned to the left and crossed the center of the slab, as if the driver were trying to ascertain if he could pass. When this car turned into the center, it was about forty or fifty feet in front of the Collins car. As it hugged the center, Mr. Collins turned his wheel gradually

to the right, to be sure his car was in the clear. The approaching car turned back into the line of south-bound cars, but the right front wheel of Mr. Collins' car went into the rut. At that time the slab was covered with water, the rut was filled with water, and the place where rut and slab met was not distinguishable. The rut was deep enough that the tie-rod of the Collins car was bent. The rear wheels swung around to the left, the car turned completely over, and when it stopped it was on the edge of the east ditch, and was facing south. Mr. Collins testified:

"Q. Could you discern the end of the pavement there before you slid into this ditch [rut]? A. No, I didn't see it. It all looked level to me.

"Q. Was there any ditch there apparent to you? A. No, sir; there was no ditch there that anybody could see, because it was full of water.

"Q. Now, Mr. Collins, how long after you turned this car and fell in this ditch was it, until your car was turned over and headed the other way? A. And stopped, you mean?

"Q. Yes. A. Well, I'll tell you. Just about the time you could say one, two, three. I think that was the end of it."

Mrs. Collins observed the movement of the car which drew over to the center of the slab, and observed that her husband drew his car toward the side of the pavement. She said nothing to her husband. She testified that, when her husband gradually turned his car to the right, there was a sudden lunge, as if the car dropped into something, it dragged a short distance, the rear of the car swerved around, the car went off of the pavement, turned around, and rolled over. Mrs. Collins was very seriously injured.

The material portion of the statute governing liability of the state highway commission for highway defects reads as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state of Kansas; that is to say, such recovery may be from the state when the director of highways, or state highway engineer, or any member of such state highway commission, or any foreman, patrolman, or other employee in charge of the construction, maintenance or upkeep of such highway, shall have had notice of such defects five days prior to the time when such damage was sustained, and for any damage so sustained the injured party may sue the state highway commission, and any judgment rendered in such case shall be paid from any funds in the state highway fund on the order of the state highway commission." (R. S. 1930 Supp. 68-419.)

The former statute relating to the same subject reads as follows:

"Any person who shall without contributing negligence on his part sustain

damage by reason of any defective bridge, culvert, or highway, may recover such damage from the county or township wherein such defective bridge, culvert or highway is located, as hereinafter provided; that is to say, such recovery may be from the county when such damage was caused by a defective bridge, culvert or highway constructed wholly or partially by such county, and when the chairman of the board of county commissioners of such county shall have had notice of such defects for at least five days prior to the time when such damage was sustained; and in other cases such recovery may be from the township, where the trustee of such township shall have had like notice of such defect." (R. S. 68-301.)

This statute continues to govern liability for defects in highways not a part of the state highway system. Comparison of the statutes shows the essential elements of liability are the same for townships, counties, and the state highway commission.

The present statute contemplates liability for defects in highways improved by hard surfacing, and the liability is not limited to defects in the hard surface, as for example the concrete slab on U. S 40. There was testimony that the purpose of shoulders is to support the concrete slab, and not to provide a way for travel, which is true in a sense. But a hard-surface highway may be defective because it has no shoulders. Lack of any shoulder for a concrete slab eighteen feet wide, eighteen inches above the surface, and a mile long, would manifestly render the highway defective for purposes of travel. Of course the slab is intended to be and is the traveled way; but it is a matter of common knowledge that careful automobile drivers not only may on occasion, but frequently must, use the shoulders to some extent as a part of the highway, and a pitfall in a shoulder, adjoining or even adjacent to the slab, may constitute a defect in the highway.

There is no legal foot-rule by which to measure conditions generally and determine with precision whether a condition constitutes a defect. Some conditions may be so patently dangerous that a verdict denying defect would be promptly set aside. Other conditions may be so trifling that a verdict of defect would be promptly set aside. The same observations apply to the subject of care and lack of care of an automobile driver the wheels of whose car depart from the paved portion of the highway.

In this instance the case is presented as if the court had not again and again announced and applied rules governing the method of dealing with evidence when a demurrer to evidence is under consideration, and it is contended that this court should declare, as a

matter of law, that the rut was not a defect in the highway but was merely a slight depression; that the driver of the car was guilty of negligence; that plaintiff was guilty of negligence barring recovery; and that the rut was not the proximate cause of the accident. The contentions are so lacking in merit that the court declines to discuss them, except as they may be involved in a discussion of some authorities relied on by defendant.

Cases are cited in which the court has held that an automobile driver must so operate his car in the nighttime that he can stop within the range of vision afforded by his headlights. The cases have no application. Mr. and Mrs. Collins both saw everything necessary to be seen, except the rut; failure to see the rut did not result from insufficient light; Mr. Collins rested under no absolute legal duty to stop before the accident was in progress; and Mr. Collins testified that after the wheel went into the rut he applied his brakes lightly and tried to right the car, but could accomplish nothing.

The case of *Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338, is cited. The syllabus reads:

"In a case where two distinct, successive causes, wholly unrelated in operation, contribute toward the production of an accident resulting in injury and damages, one of such causes must be the proximate, and the other the remote, cause of the injury.

"A prior and remote cause cannot be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury." (¶¶ 1, 2.)

On the basis of this decision an argument is made to the following effect: The slab was perfectly safe; if Mr. Collins had stayed on the slab the accident would not have occurred; if Mr. Collins had been in the exercise of reasonable care, and had had control of the car before the accident occurred, he could have kept it on the slab, consequently he was guilty of negligence; Mrs. Collins took no precaution for her own safety; therefore, negligence on the part of Mr. Collins, or Mrs. Collins, or both, and not negligence in suffering the rut to exist, was the proximate cause of the accident.

Counsel for the state highway commission do not suggest any front-seat driving which Mrs. Collins might have done as a precaution for her own safety, and there is no sound authority which requires the court to declare that she was guilty of negligence as a

matter of law. The testimony was that the car was under perfect control until the wheel went into the rut, and there is no sound authority which requires a decision that Mr. Collins was guilty of negligence as a matter of law. Therefore, there was not, as a matter of law, a distinct, unrelated and efficient cause of injury intervening between the negligence in allowing the rut to exist and the injury.

Assuming the highway commission was negligent, its negligence consisted in suffering the rut to exist. Existence of the rut imperiled drivers and occupants of automobiles. Assuming Mr. Collins was negligent, his negligence consisted in not avoiding the peril. His negligence might have contributed to the disaster, but his negligence was not a superseding cause of the disaster. The negligence of the highway commission registered most potently in the result, and there were not two distinct, successive causes, wholly unrelated in operation, which contributed to the injury.

Assuming Mrs. Collins was negligent—a violent assumption— recovery might be denied because her negligence contributed to the accident, but not because her negligence was a superseding cause of the accident.

In view of the state of the record, it is not necessary to discuss the case further. It is not clear the notice of appeal was sufficiently specific to bring up the demurrer to evidence and motion for judgment, but because the case is the first one arising under R. S. 1930 Supp. 68-419 which has been brought to this court, the court has given the highway commission the benefit of the doubt.

The judgment of the district court is affirmed.