No. 30,885.

A. HOUDASHELT, *Appellant*, v. THE STATE HIGHWAY COMMISSION, etc., *Appellee*.

(21 P. 2d 343.)

Opinion filed May 6, 1933.

*James A. Allen, B. M. Dunham*, both of Chanute, *P. E. Nulton* and *G. L. Stevenson*, both of Pittsburg, for the appellant.

*Wint Smith*, attorney for state highway commission, *Edward F. Arn*, assistant attorney for state highway commission, and *Hugo T. Wedell*, of Chanute, for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover for injuries sustained in an accident on a state highway, and is here on plaintiff's appeal from an order sustaining a demurrer to his evidence.

Summarized, plaintiff's petition alleged that the accident occurred on November 23, 1930, about 6:30 p. m., on state highway No. 6 about two miles south of Kimball, and at a point near a bridge or

culvert; that the highway and the bridge or culvert were defective, in that the culvert was too narrow to permit safe passage, that it was not in the center of the road; that there were no proper guard rails and barriers at the bridge or culvert; that there was failure to provide any warning by signs and markers, and that the defendant had five days' notice of the defect; that plaintiff, while a passenger in a car with F. C. Houdashelt, was passing on said road "in the exercise of due care and was not then and there guilty of any contributory negligence on his part" and was injured by the car running into posts along the side of the highway, and that notice was given as required by statute and a copy thereof was attached to the petition. Defendant's answer consisted of a general denial and an allegation that if plaintiff was injured, it was due to his own negligence and/or the negligence of F. C. Houdashelt.

Before the appellant could recover, the burden was upon him to show:

1. That the highway and culvert were a part of the state highway system and not within an incorporated city.

2. That the highway and culvert were defective.

3. That such defect was the proximate cause of the injury.

4. That the state highway commission had five days' notice of the defect in the manner and form as provided by statute.

5. That notice stating the time and place of the accident was given in time and manner as provided by statute.

In considering the matter of the correctness of the ruling, all evidence tending to prove plaintiff's right to recover must be taken as true. At the trial it was stipulated that the highway in question is a part of the state highway system, and that written notice of the injury was given as provided by law. It is conceded that the place of the accident is not within an incorporated city. In summarizing the evidence, only those facts bearing on the correctness of the lower court's ruling will be noticed.

The plaintiff testified he was a farmer seventy-one years old and had lived in the vicinity of Walnut for fifty years; that on November 23, 1930, he was a passenger in a motor vehicle on highway No. 6, and, as abstracted, in part as follows:

"Mrs. Spoonamore was keeping house for me. My son, Floyd, and I left home for Chanute on the 23d day of November, 1930. My son from Caney, Kansas, and his wife had been visiting with us on that day. Also, my daughter and her husband from north of town. My son, Floyd, and I left for Chanute

for the purpose of taking my son, J. C. Houdashelt, and his wife to the train. We took Mrs. Spoonamore's car for that purpose. We aimed to take my son's car but it was a little out of shape and she told us to take her car. We went to Chanute and left my son and daughter-in-law at the depot. Then my son and I started back home. It was on that trip back home from Chanute that this accident occurred. 1 was sitting on the right-hand side of the car and my son was driving. . . . I don't suppose there was anything only the darkness to obstruct my view of the posts along the side of the bridge as we approached that bridge from the north. We had lights on. I suppose they were good. I saw the light of a car coming from the south as we approached this bridge or culvert. I have no way of telling how far away it was when I first saw the light of that car. It was probably a hundred yards, I could see the lights quite a ways. I don't know whether I could see the lights more than three hundred feet. I saw this car coming before it got to the bridge and I saw it before we got there, too. We kept right on going toward the bridge. I don't know whether this car went over the culvert ahead of us or not, I couldn't say. To the best of my knowledge they both struck the culvert at about the same time. I didn't know what our car struck after it hit. I could see until we hit that post. I did not see those posts along the north side of the bridge and along the west side of the road that night. I was not looking for them. I was not paying any attention, I was not driving the car. I was not looking for any posts. We went over that road to Chanute. I can't say whether the posts were painted or not, I don't know, I paid no attention. . . . As we approached this bridge or culvert I was looking at the cars that were coming from the south. I was seated on the right-hand side or west side of the car. It was dark and I couldn't see any posts that might have been located on the west side of the road. I wasn't particularly looking for any posts, my sight was directed on those cars. I wouldn't say I was looking for warning signs because I was looking at those cars."

He also testified with respect to his injuries.

F. C. Houdashelt testified he was the plaintiff's son and was driving the car and, quoting from the abstract—

"The highway was surfaced with chat. In my judgment the traveled portion of the highway was probably twenty-four feet wide, something like that. At the time of the accident we were driving south. I was traveling on the right side of the west side of the road. The accident occurred near or at a bridge or culvert located on this highway. I was not familiar with this highway at that time. I had not passed over this highway for probably six months prior to November 23, 1930. . . . There was other traffic on the highway just prior to this accident, other automobiles. They were going north. There were at least two. I saw their lights, they were approaching us from the south. They were going at a pretty good lick. I was keeping a lookout down the road ahead of me in the direction I was traveling as I approached these cars. We hit a post there at the bridge. It upset the car, bottom side up. . . . The post that we ran into was setting to one side of the bridge. It was setting on the north side of the bridge and on the west side of the highway. I saw

the post before I hit it. When I first saw the post I was within a foot or two of it, something like that. At the time I first saw the post we were just meeting one car and the other was up the road toward the south of this bridge. When I saw this post I turned my car or tried to turn it up into the road to the left. The post struck just inside of the right front fender and outside of the front headlight on the right side. As I met this car that passed there at the time I had this accident I was traveling around fifteen miles an hour. . . . The lights on the car I was driving were in good condition. Darkness prevented me from seeing these posts that were on the north side of this bridge and on the west side of the highway. That is not the only thing, I was watching the other cars. The lights of the other cars did not blind me. I looked for posts on the west side of the road as we approached the bridge. I did not see them on account of the darkness and I was also watching this other car to keep from colliding with it. I did see the post just before we hit. I didn't have time to stop. I didn't stop when I found I could not see what was on the west side of the highway as we were going south because I knew I was in the road. I couldn't see what was ahead of me away down the road. I couldn't say just how far my lights lighted the road ahead of me. Probably twenty to twenty-five feet ahead of me. I have an idea I could see farther than that ahead of me down the road, maybe thirty feet. I don't know whether I could see beyond thirty feet or not. From my best knowledge there were three posts north of the bridge and on the west side of the highway. I hit two of these posts. I think I hit the second one from the outside post first and then the next one to it, that would be the one closest to the bridge. When I hit these posts my car skidded across the bridge and turned over. . . . The brakes on this car that I was using that afternoon were all right."

Eben Klaus testified that he had been patrolman for this particular highway since September 1, 1926, first for Neosho county and after April 1, 1929, for the state highway commission and, quoting from the abstract:

"I am familiar with and was acquainted with the culvert or bridge where the accident in question happened. Prior to the 23d day of November, 1930, I passed over this particular bridge or culvert or over this highway in the discharge of my duties as patrolman every Monday, Wednesday and Friday. . . . I was familiar with that culvert. I knew the condition the culvert was in. It was a fourteen-foot culvert. The center of the culvert was not in the center of the highway. The center of the culvert was east of the center of the road. If a person was coming from the north and traveling south on the right-hand side of the road it would be necessary to turn some to the east in order to cross over the culvert. If a person were coming from the south on this highway and traveling over on the right-hand side of the road going north it was not necessary for them to turn in order to go over this culvert. They would just keep on the main-traveled portion of the highway. There were posts there at this culvert on the west side of the road and on the north side of the culvert. There were six on each end of the bridge. There were

three posts on each side of the culvert on the west side of the road and on the east side of the road there were three on each side of the culvert. They were set out at an angle across the road of about thirty degrees, something like that, extending from the northwest corner of the bridge. I judge they were about three feet apart. They were just plain posts. They had been painted. I couldn't say how long it had been before November 23, 1930, that they had been painted, but I know the state highway men were around there once in a while painting those posts. As a patrolman I was familiar with that culvert. . . . These posts on the north side of the bridge and on the west side of the highway were painted aluminum. They had aluminum paint on them on the 23rd day of November, 1930. . . . Prior to November 23, 1930, I never had a personal knowledge of the posts which were north of the bridge and on the west side of the highway not being properly placed. . . . I never measured this road, but it is about a twenty-seven-foot road. This culvert was fourteen feet wide east and west. About nine feet of this bridge was located east of the center of the highway at the time of the accident. . . . That would leave five feet west of the center of the road on November 23, 1930, when this accident occurred."

Alvin Brown testified he was a farmer living near and that there were no guard rails or bannisters upon the approaches of the culvert on November 23, 1930, except the posts, and no "narrow bridge" or "slow" signs, and that about two weeks after the accident signs were placed.

Henry Hazen testified he was township treasurer and familiar with the culvert in question. His testimony, similar to that of other witnesses in many particulars, is that the culvert is probably fourteen feet wide and about nine feet of it was east of the center of the road. The posts were painted white aluminum and were about two and one-half feet above the ground.

No attempt has been made to restate the testimony as to plaintiff's injuries, nor as to his mode of living, earning, etc., nor to show in full each witness' testimony where it is repetition of another's.

The first matter for consideration is whether the evidence showed any defect in the highway. Appellant directs our attention to R. S. 68-1109 providing for the width of bridges and culverts, but it should be noted that the section applies to bridges and culverts constructed under the provisions of "this act," which is chapter 80 of the Laws of 1917, as amended, and now appearing as R. S. 68-1101 *et seq.* There is neither pleading nor proof that the culvert was built under the provisions of this act. Our attention is also directed to R. S. 68-1110 making it the duty of the county to place and maintain good, solid, substantial guard rails not less than three feet high

on each side of all bridges and culverts. Assuming that the section puts such a duty on the state highway commission for bridges and culverts under its supervision, we are first met with the proposition of what the statute means. If it refers to guard rails on the bridge or culvert itself, then it is of no consequence here, for the lack thereof—if there was a lack—did not in any manner contribute to plaintiff's injuries. If it refers to guard rails leading from the sides of the highway up to the abutments or ends of the bridge or culvert, then the evidence clearly shows that on the west side of the road and to the north of the culvert there were three substantial posts, painted white and placed for the very evident purpose of warning the traveler on the highway and preventing him from going into the ditch over which the culvert stood. It is claimed, however, that the highway was defective in that the culvert was only fourteen feet wide and was so placed in the highway that nine feet of it was east of the center of the road and five feet of it was west of the center, and appellant cites *Wagner v. Clay County Comm'rs*, 128 Kan. 127, 276 Pac. 74, in support. In that case, however, the testimony showed that just prior to the accident a part of the dirt approach had been washed out and filled in with soft dirt, that it was dusk in the evening when the accident occurred and the approach could not be seen; that the roadway appeared to be solid, and that the car ran into the soft dirt and into the ditch, and it was held that, on demurrer, this court could not say sufficient facts had not been proved.

In *Burgess v. Center Township*, 115 Kan. 346, 223 Pac. 475, plaintiff was driving along a roadway crossed by a small stream bridged with planks sixteen feet long, the bridge was ten feet wide and set somewhat obliquely to the road, and he contended that the bridge and highway were defective, and the township board had notice. In disposing of the contention this court said:

"Plaintiff also contends that 'the testimony shows clearly that the bridge was constructed as it stood at the time of the trial; that it stood obliquely across the roadway,' and that it was established and admitted that the trustees were fully apprised of its situation. Granted. Many bridges are purposely built to stand obliquely to the general direction of a public road. That is a question or problem of good engineering, and would involve consideration of the contour of the land, the course of the stream bed, the approaches, and the like. There was no evidence that such construction was insufficient or improper, or that the township trustees knew that a bridge so constructed and situated was or would be dangerous to public travel. (*McFarland v. Emporia Twp.*, 59 Kan. 568, 53 Pac. 864.)" (p. 349.)

In *Watson v. Parker Township,* 113 Kan. 130, 135, 213 Pac. 1051, it was said a defective highway is simply a public road which is dangerous to the traveling public.

In *Collins v. State Highway Comm.,* 134 Kan. 278, 283, 5 P. 2d 1106, it was said that there is no legal foot-rule by which to measure conditions generally and determine with precision whether a condition constitutes a defect, that some conditions might be so patently dangerous that a verdict denying defect would be promptly set aside, and other conditions might be so trifling that a verdict of defect would be promptly set aside.

In *Williams v. State Highway Comm.,* 134 Kan. 810, 8 P. 2d 946, it was held that a hole in the highway was a defect and—

"A condition of a highway which renders it dangerous for the public . traveling over it is certainly a defect." (p. 813.)

In *Gorges v. State Highway Comm.,* 135 Kan. 371, 372, 10 P. 2d 834, appears the following:

"The liability of the state for injuries growing out of defective highways is statutory. It is not founded on the law of negligence but is created wholly by legislative enactment. (*Arnold v. Coffey County Comm'rs,* 131 Kan. 343, 291 Pac. 762.) . . . It has been held that under certain circumstances whether a road is defective is a question of fact to be determined by the jury (*Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051; *Collins v. State Highway Comm.,* 134 Kan. 278, 5 P. 2d 1106), but whether an alleged defect comes within the purview of the statute, creating liability, is a question of law to be determined by the court."

The only defects alleged are that the culvert is narrow, does not sit in the center of the road and is not provided with "proper guard rails," and the testimony, which it is not necessary to reiterate, shows no more. Under the decisions, we fail to see wherein the highway is defective, and we are impelled to this conclusion not only from the showing in the evidence as to the construction and condition of the highway and the culvert, but also by the fact that plaintiff's injuries were caused by the car colliding with the very guards the absence of which he alleges constituted a defect.

· Where there is no defect which contributes to the injuries complained of, there is no situation of which the state highway commission must take notice.

And it might be remarked that if there were a defect, it might well be held under the evidence it was not the proximate cause of the injury.

The plaintiff's evidence showed that their car was driven along

the highway and into the posts; that the lights of the car lighted the road from 25 to 30 feet ahead; that the posts were painted white or aluminum, that the posts were properly placed to warn travelers on the highway, and the only reason they did not see them was that they were looking at approaching cars instead of the highway down which they were proceeding. While the rule is that the burden is on the defendant to prove contributory negligence, it will not be interpreted to mean that if plaintiff's own testimony shows him guilty of such negligence as precludes a recovery, the defendant cannot take advantage of it. The testimony showed plaintiff and his son were on a joint mission (*Howard v. Zimmerman,* 120 Kan. 77, 242 Pac. 131), and it likewise showed they were in equal position to and were both looking forward as the car was proceeding immediately before the accident, and it was their duty to so operate the car that it could be stopped within range of their vision. See *Jones v. Atchison, T. & S. F. Rly. Co.,* 129 Kan. 314, 282 Pac. 593, and *Tuer v. Wayland,* 129 Kan. 458, 283 Pac. 661, and cases cited therein.

The judgment of the lower court is affirmed.