No. 33,486

JOHN R. PARSONS, *Appellee*, v. THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant*.

(72 P. 2d 75)

Opinion filed October 9, 1937.

*Lester M. Goodell,* assistant attorney general, and *Otho W. Lomax,* of Topeka, for the appellant.

*John R. Parsons,* of Wakeeney, *pro se.*

The opinion of the court was delivered by

HARVEY, J.: This was an action for damages for injuries sustained by plaintiff, personally, and to his car, alleged to have been

caused by a defect in the state highway. A jury trial resulted in judgment for defendant, in which the jury answered special questions to the effect that there was no defect in the state highway and that plaintiff's negligence contributed to his injury. Plaintiff filed a motion for a new trial. Before that could be heard the trial judge who had presided at the trial died. His successor heard the motion and granted a new trial. Defendant has appealed, and contends the court erred in overruling its demurrer to plaintiff's evidence.

Briefly, the facts shown by the evidence may be stated as follows: A state highway, known as U. S. 40, traverses the state from east to west through Wakeeney, in Trego county. About seven miles west of Wakeeney it curves from the section line to the north around some farm improvements, where there is a round barn, and back to the section line. The place is commonly known in the vicinity as the "Round Barn," or the "Round Barn Curve" on the highway. Plaintiff is a lawyer, engaged in the active practice at Wakeeney, and is familiar with this highway and the curve therein. Aside from other business which took him over the highway he had a farm, which he supervised, a short distance west of it; also, his elderly mother, whom he visited frequently, lived a few miles west of it. The highway has been improved by the state highway commission with a black mat pavement of standard width, with graded shoulders on each side. Approaching this curve from the west, at an appropriate distance from the beginning of the curve north, there is a large sign, four feet square, painted yellow, with the word "slow" in large black letters. Near it is a "curve" sign, also a sign indicating an "S" curve, all of these being the standard signs used on the state highway for such curves. The curves are not sharp, but on the other hand are constructed on a wide radius. This curve is so graded that the outside of the curve is higher than the other side, and white posts were put along the outside of the curve; that is to say, at the beginning of the curve from the west the grade is higher on the south side than the north, and the white posts are on the south side of the grade, proceeding until the curve nears the farthest point north, where the grade levels off and then becomes higher on the north side than on the south, and the posts are on the north side. That structure continues around the north part of the curve and as the road turns back toward the section line, but when it approaches that line the higher part of the grade is on

the south side and the posts are on the south side. In constructing this curve two culverts were placed across the highway for drainage purposes. One coming from the west crosses one of these culverts soon after he turns to the north. The other is east of the round barn soon after the road begins to turn to the southeast, and at this point the highway is almost straight for some distance, northwest to southeast. This is what is spoken of as a cement box, 8 feet wide, 5 feet deep and 30 feet long. At the end of the culvert are upright cement posts, with railings from one to the other, painted white.

On the evening of May 1, 1936, about 10 o'clock, plaintiff, returning to Wakeeney from the west, driving around this curve, saw approaching him from the east several trucks which he took to be oil trucks. They proved to be new trucks, three of them, each having attached to it another truck, being transported across the country, traveling one a short distance behind the other. He observed these when they were half a mile or more from him. When he was at the north part of this curve, around the round barn, the forward one of these trucks was turning northwest on the curve from the east. The truck lights were bright. Plaintiff had been driving about 35 miles per hour, but slowed his car to about 20 miles per hour. It was in good condition, and, although six years old and having been driven a great deal, had been overhauled recently and had good lights and good brakes; he could have stopped it within the distance he could have seen the culvert. Plaintiff's car and the foremost of the trucks were at such a distance apart and so located on the highway that they would pass on or near this east culvert. Plaintiff pulled to his right so that the right wheels of his car were on the shoulder and only the left wheels on the pavement. He testified he did this in order to give the truck all the room he could and because he could best see where he was by looking at the sand on the shoulder near the edge of the pavement. As he drove along he continued to look at this sand on the shoulder directly in front of his car. He did not look forward to see the upright white posts at the end of the culvert. As the truck came across the culvert its left wheels were a little to the south of the center of the culvert, but there was ample room for plaintiff's car to pass it on the culvert. Indeed, the culvert was wide enough to accommodate four cars abreast. The pavement passed over this culvert, which was wider than the pavement, but not as wide as

the graded portion of the highway. As plaintiff drove along he did not look ahead for the culvert or the posts at the end of it; he was watching intently the sand on the shoulder near the edge of the mat pavement directly in front of his car. He struck the upright white cement post at the south end of the culvert with the left end of his front bumper and the left side of the frame of his car. His right wheels were near the edge of the ditch. The car hesitated and rolled over to the right and landed in the bottom of the ditch upside down. The car was damaged, plaintiff's face was cut, he was otherwise bruised, and possibly sustained fractured ribs. The truck which had just passed stopped and its driver and others helped him out of the car. He complained to the driver about his bright lights and charged him with having "hogged" the road. That evening, in talking with others who came to the scene, he charged the accident to the bright lights of the truck, which prevented him from seeing just where he was. He testified that he examined the situation the next morning and then thought the driver of the truck was not so much to blame; that the left wheels of the truck were only a little way south of the center of the mat on the culvert, and that he had ample room to pass if he had not driven so far to the right on the shoulder. He then laid the blame to the fact that the curve sign east of the curve was not far enough east to advise the driver of the truck of the curve in time, and he then thought this was the reason the truck driver had not kept as far to his right as he could have done in crossing the culvert. Later he concluded that the highway was defective in that posts were not set along the south side of the grade for a distance directly west of the south end of the culvert. He gave notice to the state highway commission, first estimating his damages at $150, but later gave a second notice modifying the first as to the amount of damages, stating it was $533. This is the sum for which he brought the action.

The action is predicated on G. S. 1935, 68-419, which, so far as here important, provides: "Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in the state highway, . . . may recover such damages from the state of Kansas; . . ." by an action against the state highway commission if certain officers or employees of the state highway commission knew of the defect in the highway as much as five days before the action and notice

containing certain information is served upon the state highway commission and the action brought within a time stated in the statute.

Under this statute the state has consented to be sued for damages caused by defects in the highway where the person sustaining such damage is not guilty of negligence which contributed thereto. The state is not an insurer of travelers on its highways; neither is it required or expected to have perfect highways. (*Hill v. State Highway Comm.*, 143 Kan. 129, 53 P. 2d 882, and cases there cited.) Acting through the state highway commission its purpose is to improve highways. Whether the road was defective within the meaning of our statute is a question of law, if there is no controversy over the facts. (*Houdashelt v. State Highway Comm.*, 137 Kan. 485, 21 P. 2d 343; *Espey v. State Highway Comm.*, 143 Kan. 873, 877, 57 P. 2d 424.) The fact that there is a curve in the highway does not make it defective within the meaning of the law. (*Elliott v. State Highway Comm.*, 138 Kan. 738, 28 P. 2d 960.) Here the highway, with its curves, was constructed in accord with standard improved methods of constructing highways, and appropriate signs had been placed in proper position.

Plaintiff's real contention is that the highway was defective because there were no posts, painted white, along the south edge of the grade immediately west of the south end of the culvert. We find it difficult to see how that would have prevented plaintiff's running into them. He did not see the white posts at the south end of the culvert; he was not looking for posts; he was looking intently at the ground immediately in front of his car; he was not even driving upon the mat pavement. He argues he was not compelled to drive on the pavement, but had a right to drive on the shoulder if he chose to do so, citing *Collins v. State Highway Comm.*, 134 Kan. 278, 5 P. 2d 1106. Obviously, if he did so he should have used due care. We think it clear from this record that there is no defect in this highway, within the meaning of the law, which caused plaintiff's injury, and that any fair-minded jury would necessarily reach the conclusion that it resulted from plaintiff's lack of due care. Plaintiff's negligence may be shown by evidence offered in his behalf. (*Houdashelt v. State Highway Comm.*, 137 Kan. 485, 21 P. 2d 343.) With this view it is no kindness to anyone to have this case tried again. The demurrer to the evidence should have been sustained.

Appellee's argument is devoted mainly to criticism of instructions

given and some matters not in the record, which, it is contended, justified the court in granting a new trial. This argument is not germane, since this is not an appeal from the order of the court granting a new trial. The appeal is from the order of the court overruling a demurrer to the evidence. This alone is an appealable order. (G. S. 1935, 60-2909, 3d clause; 60-3302; *Emerson-Brantingham Imp. Co. v. A. C. Penniman & Son H. Co.*, 132 Kan. 56, 57, 294 Pac. 883.) Appellee argues that by going forward with the trial after the demurrer to the evidence was overruled appellant is precluded from appealing from that order. The point is not well taken. This has been held to be an appropriate procedure. (*Israel v. Lawrence*, 126 Kan. 586, 270 Pac. 602; *Coulter v. Sharp*, 145 Kan. 28, 29, 64 P. 2d 564.)

The judgment of the court below is reversed with directions to sustain the demurrer to the evidence and render judgment for defendant.