No. 35,988

JEWELL SLATON, a Minor, by W. L. Slaton, Her Uncle and Next Friend, *Appellee* and *Cross-appellant*, v. THE UNION ELECTRIC RAILWAY COMPANY, *Appellant* (THE CITY OF COFFEYVILLE, *Appellee*).

(145 P. 2d 456)

Opinion filed February 1, 1944.

*Dallas W. Knapp,* of Coffeyville, argued the cause for the appellant.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Clement A. Reed,* of Coffeyville, was on the briefs for the appellee.

*Aubrey Neale,* of Coffeyville, argued the cause for appellee City of Coffeyville.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages sustained by plaintiff while riding in an automobile which collided with a freight car which was being pushed by an electric locomotive on defendant's street railway in Coffeyville. The city of Coffeyville was impleaded as defendant.

The Union Electric Railway Company has a railway line which runs east and west on Eighth street in Coffeyville. That street is about thirty feet wide and is paved with brick. Buckeye street crosses Eighth street in a suburban part of the city.

On Labor Day, September 8, 1942, plaintiff and two young men, Arthur Cornett and Toby Curtis, spent part of the day riding about town in Cornett's automobile. Curtis did the driving. Late that night another girl, Lucille Blumenstein, joined them. She and Curtis sat in front and Jewell Slaton and Cornett occupied the rear seat. About half an hour after midnight, while these young people were riding westward on Eighth street near its crossing with Buckeye street, Toby Curtis, their driver, undertook to pass another automobile going in the same direction. To do so he veered to the left, astraddle of the streetcar track. At that time a large freight car was approaching from the west, being pushed by defendant's electric locomotive. Before Toby Curtis got the automobile off the track it collided with the freight car and Jewell Slaton was injured.

Hence this lawsuit.

In her petition Miss Slaton pleaded her version of the accident and her resulting injuries, alleging that the defendant railway company was negligent in the following particulars:

"That the brick pavement between the rails of said defendant's track were lower than the rail. That the brick and filler adjacent to the inside of its north rail had been removed and worn away, causing a ditch or depression along the inside of said north rail, so that the tire on the car in which plaintiff was riding could not be driven over said rail with safety, but caught against said rail, thereby causing said collision."

Plaintiff's petition also alleged that defendant failed to have a light on the front end of the freight car as it was being pushed eastward, so that the same could have been seen and warning given in time for the driver of the automobile to get off the streetcar track. It was alleged that the pavement—

"On the inside of the north rail . . . [was] from one to four inches lower than the top of the rail. That said brick did not fit against the north rail, and the filler between the brick and the rail had crumbled and worn away, so that there was a ditch or depression from two to six inches deep and from three to eight inches in width adjacent to the north rail.

. . . . . . . . . . . . . . .

"That when the car in which plaintiff was riding was approximately seventy-five (75) feet from the approaching box car . . . Toby Curtis turned the steering wheel of said car to the north and attempted to drive said car off the streetcar track. That the left front tire upon said automobile caught against the north rail and the car slid forward for a distance of approximately thirty (30) feet, at which time it cleared the rail, and the back tire caught on said rail, holding the automobile on the track. That the train . . . kept coming from the west, and, without diminishing its speed, struck the car in which plaintiff was riding, thereby crushing and mashing the same, and cutting, mashing and injuring the plaintiff . . ."

The petition also charged that defendant failed to have an employee on the front end of the freight car so that such employee could have seen the automobile in which plaintiff was riding and signalled defendant's motorman to stop in time to avoid the collision.

Plaintiff also alleged that the defective condition of the street had existed for more than six months and that the city of Coffeyville, and its agents and servants knew or should have known its condition in time to repair it, but that they negligently failed to discover its defective condition, which resulted in her injury and damage. She prayed for $10,000 damages against the street-railway company and against the city.

The defendant railway company answered with a general denial, and alleged that if plaintiff was injured at the time and place alleged, said injuries were the sole result of an unavoidable accident for which defendant was not responsible.

The city's separate answer was to the same effect, with the further plea that plaintiff's petition did not state a cause of action against the city.

The cause was tried before a jury. By the time the evidence for all parties was completed, it developed that there was no failure on the part of the railway company to have the advancing end of

the freight car properly lighted and to have an employee riding in front. There was testimony that at and near the point of the collision the groove inside the north rail was somewhat deeper than necessary for the free operation of the flanges on the wheels of the defendant's cars and vehicles. It was shown that the advancing freight car on the street-railway tracks could have been seen for a long distance by the occupants of the automobile; and that for the purpose of passing another automobile going in the same direction the driver of the Cornett car drove it on to the streetcar track in the face of the on-coming freight car about the intersection of Buckeye street and Eighth street, and that the point of collision was a short distance west of there. There was evidence that the Cornett car was traveling westward at 25 miles per hour, and that the freight car was being pushed eastward at 15 to 20 miles per hour. Defendant's freight car and electric engine were equipped with an air hose which, by manipulation of hand levers under control of the employee riding on the front end of the freight car, would sound a whistle and set the brakes of the train.

Plaintiff testified quite candidly:

"I rode along in the automobile that night . . . to the point of collision. I . . . did not see any light, . . . did not see a box car . . . I paid no attention to the driving and did not pay any attention to the streetcar in front of us; I paid no attention to the streetcar tracks and did not look or listen or anything like that."

Arthur Cornett, plaintiff's seat-mate in the car (and who has since married her) testified with equal candor to the same effect.

Lucille Blumenstein, who rode in the front seat with the driver, testified that when their automobile was passing the other car prior to the accident, she had been looking straight ahead but "turned around to say something to Jewell . . . and the next thing I looked and seen the Union Traction boxcar coming up the street just before it hit us."

Toby Curtis, driver of the automobile, testified by deposition:

"I passed a car near Buckeye [street], and as I went around it, I got over on the streetcar tracks."

When Curtis gave his deposition he had deposed,—"but I did not see a streetcar until I was about, it must have been about ten feet." However, before he signed his deposition, he changed the words "ten feet" to read "seventy-five feet." When this portion of the deposition was read in court it precipitated a colloquy between coun-

sel for the litigants extending through several pages of the abstract. The driver's deposition also read, in part:

"Q. After you passed the car you mentioned, did you attempt to pull back to the north side of the street, or did you continue driving west with your wheels in the streetcar track? A. Well, I hadn't gone but just a little ways until I saw the streetcar.

. . . . . . . . . . . . . . .

"Q. Where was the [freight] car when you first saw it, relative to the west side of Buckeye street? A. (I believe) it was west of Buckeye.

"Q. How far west of Buckeye would you estimate it was when you first saw it? A. About 75 feet.

"Q. Were you east of Buckeye when you first saw the car? A. No.

"Q. Where were you when you first saw it? A. Just about to the west side of Buckeye.

. . . . . . . . . . . . . . .

"If the railroad car had been equipped with lights on the east end of the car that was being pushed there was nothing to prevent me from seeing the car."

Curtis's testimony touching the left side wheels of the automobile being caught inside the north rail reads:

"The south wheels were over the north rail of the streetcar track. . . . then I saw the streetcar . . . So I cut it sharp, and the front wheel and the hind wheel caught on the rails as I started to turn, and slid forward. The front wheels released within a few feet of the streetcar, before the car got off, and the streetcar hit about middle ways of the left front fender."

Cornett testified:

"When we got in front of Mathis' the car started sliding forward and we could not get off the track. The front wheel caught on the north rail and kept on sliding, when the front wheel broke loose the back wheel caught, and before we had a chance to get off the streetcar hit us."

At the conclusion of plaintiff's evidence the defendant interposed a demurrer based on the insufficiency of the evidence to prove a cause of action, and—

"For the further reason that contributory negligence of the plaintiff affirmatively appears from the evidence introduced by and on her behalf, which as a matter of law, bars recovery by her in this action and does not entitle the action to go to the jury."

The defendant, the city of Coffeyville, filed a like demurrer.

These demurrers were overruled. The jury returned a general verdict for plaintiff against the defendant railway but returned a verdict in favor of the defendant city and against the plaintiff. With their general verdict, the jury also returned special findings, viz.:

"1. For what distance was the automobile in which plaintiff was riding driven on the streetcar track before it collided with the box car? A. 85 feet.

"2. What was the greatest depth of the groove on the inside of the north rail from the center of Buckeye street to the point where the collision occurred? A. 3 inches.

"3. Were there any lighted lanterns on the front end of the box car at the time of and immediately before the collision occurred? A. Yes.

"4. If you answer question No. 3 'Yes,' how many lanterns were there and what color of light did they show? A. 2 red and 1 white.

"5. If you answer question No. 3 'Yes,' for what distance could these lights have been seen by the plaintiff had she been looking? A. 600 feet.

"6. If you find for the plaintiff and against The Union Electric Railway Company, in what respect was the railway company negligent? A. Irregularity of rail and track bed.

"7. Was Willard Tucker [employe of defendant] riding at or immediately near the front end of the box car at the time of and immediately before the collision? A. Yes.

"8. What, if anything, did the plaintiff do or say to the driver of the automobile in which she was riding to warn him of the approaching cars of the railway company? A. Nothing.

"9. If you find for the plaintiff and against The City of Coffeyville, in what respect was the city negligent? A. City was not negligent.

"10. If plaintiff had been looking in the direction of the approaching railway cars could she have seen them when the automobile in which she was riding was . . . (d) 600 feet from the railway cars? A. 600 feet.

"11. Was the defendant, The Union Electric Railway Company, negligent:

"(a) In that the street between the rails was defective and unsafe at the place where the collision occurred? A. Yes.

"(b) In that it failed to have lights on the boxcar being pushed toward the automobile in which plaintiff was riding? A. No.

"12. Was Willard Tucker riding on the front end of the box car as it was being pushed toward the car in which plaintiff was riding? A. Yes.

"13. If you answer question No. 12 in the affirmative, then state if after Willard Tucker had observed the car in which plaintiff was riding on the street car track, could he by the exercise of ordinary care have stopped the train in time to have avoided the collision? A. Yes.

"14. Do you find that the plaintiff was guilty of any act of negligence that contributed to her injuries? A. No.

"15. If you answer question No. 14 in the affirmative, then state the act or acts of negligence committed by plaintiff that contributed to her injuries? A. None."

The defendant railway company filed a motion to strike out the answer to special finding No. 11 (a) and findings 14 and 15, as contrary to the evidence and too indefinite to sustain the general verdict, and contrary to and inconsistent with the other special findings which found definite and specific facts. It also objected to finding

No. 13 and moved to strike it out on the ground that it was not within the issues joined by the pleadings.

The defendant railway company also filed a motion to set aside the verdict and for judgment in its behalf on various grounds, two of which read:

"3. That the special findings of fact absolve this defendant from negligence.

"4. That under the special findings the plaintiff was guilty of contributory negligence barring her recovery in this action."

Plaintiff filed a motion to amend her petition by an allegation that an employee of the defendant was upon the side of the freight car (near its northeast corner) and—

"That a device for stopping said train was connected with the air line on said train, so that by turning a lever, said employee could apply the air and stop said train within a distance of a few feet. That said employee saw the automobile in which the plaintiff was riding approaching the train, and by the exercise of reasonable care, could have stopped said train in time to have avoided said collision."

Plaintiff also moved for judgment against the city for the reason that the jury's special findings show that plaintiff was entitled to judgment against it *non obstante.*

Plaintiff also moved for a new trial against the city. Neither party moved for a new trial as to the railway company.

All these motions were overruled and judgment was entered for plaintiff against the railway company and in favor of the city of Coffeyville. The railway company appeals from the judgment rendered against it, and plaintiff cross appeals against the city.

It will be noted that the jury's special findings 3, 4 and 5 exonerated the railway company on the charge of failing to have a light on the advancing freight car which would have warned the driver of the automobile and its passengers of its approach. So, too, special findings 7 and 12 established the fact that there was a railway employee on the front end of the freight car being pushed eastward on Eighth street.

Touching the special finding No. 13, no such allegation of negligence was pleaded, and it should have been stricken out on defendant's motion. It should also have been stricken out for another reason: By its finding No. 1 which was supported by evidence the jury found that the automobile got on the streetcar track at a point 85 feet from the point of collision. The evidence showed that the automobile was traveling westward at 25 miles per hour and the railway freight car was being pushed eastward at 15 to 20 miles per

hour. It is therefore perfectly obvious that there was insufficient time after Curtis drove the automobile onto the railway track in which "by the exercise of ordinary care" the defendant's freight car and its motive power could have been stopped in time to avert the collision; and finding No. 13 was not sustained by evidence even if the alleged negligence stated in that finding had been pleaded in plaintiff's petition.

Touching the jury's special finding No. 6 that the railway company's negligence lay in the "irregularity of rail and track bed," defendant invokes the rule that a jury's specific finding of negligence exonerates defendant of any and all other negligence alleged in the petition. This rule is sound, of course (*Rasing v. Healzer*, 157 Kan. 516, 142 P. 2d 832), but whatever other findings are in accord therewith are not to be left out of consideration. (*Greiner v. Greiner*, 129 Kan. 435, 283 Pac. 651.) So we think finding No. 2 should be read in connection with No. 6. However, this does not apply to finding No. 11 (a) which is a mere conclusion, not a finding of fact, and not based on any competent evidence. (*Koster v. Matson*, 139 Kan. 124, 134, 30 P. 2d 107, and citations.) Do findings Nos. 2 and 6 support the allegation of negligence in the petition—

"That the brick pavement between the rails of said defendant's track were lower than the rail. That the brick and filler adjacent to the inside of its north rail had been removed and worn away, causing a ditch or depression along the inside of said north rail, so that the tire on the car in which plaintiff was riding could not be driven over said rail with safety, but caught against said rail, thereby causing said collision."

Surely a groove three inches deep inside the rail in which the flange of defendant's car wheels must be free to turn did not support the allegation of "a ditch or depression along the inside of said north rail." At most it was only $1\frac{1}{2}$ inches deeper than necessity required according to the evidence of the engineers who testified in the case. The findings 2 and 6 do not support the allegation that the brick pavement between the rails was materially lower than the track nor otherwise so materially defective as to support a verdict for damages against either defendant. It is obvious, we think, that the jury did not regard their duty considerately since the existence of any serious defect in the pavement likely to cause injury and damage to persons making a reasonable use of the street would be a joint liability against the city and the street railway alike. (*Street Rly. Co. v. Stone*, 54 Kan. 83, 37 Pac. 1012; *Adams v. Electric Railway Co.*, 95 Kan. 781, 149 Pac. 700.) Yet here the jury specifically found that

the city was not negligent, and that the railway company was negligent! It is only required of a city that it keep its streets reasonably safe for public use (*Taggart v. Kansas City*, 156 Kan. 478, 134 P. 2d 417), and no harsher rule can justly be imposed on the street railway company.

There is another feature of this case which completely bars a recovery by plaintiff. By plaintiff's own testimony as well as that of her witnesses, and by the jury's findings, defendant's advancing freight car could have been seen by plaintiff when it was 600 feet away. Plaintiff took no precautions whatever for her own safety. Neither did her fellow passengers nor the driver of the automobile. She made no protest when the driver of the automobile undertook to pull over onto the railway track to pass another automobile in the face of the approaching freight car. Our decisions bar a recovery under a wide variety of not dissimilar circumstances. (*Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744, and citations; *Knight v. Railway Co.*, 111 Kan. 308, 206 Pac. 893; *Ferguson v. Lang*, 126 Kan. 273, 268 Pac. 117; *Shrewsbury v. Goodacre*, 135 Kan. 230, 10 P. 2d 1; *Bryant v. Marshall*, 135 Kan. 348, 10 P. 2d 868; *Darrington v. Campbell*, 150 Kan. 407, 409, 94 P. 2d 305.)

What caused this accident was as plain as the noonday sun. The driver drove onto the streetcar track in order to pass another automobile when there was manifestly neither time nor space to do so without the identical accident which happened and which was bound to happen if there had not been even a microscopical defect in the pavement. It was exactly the sort of accident which occurs every day when one automobile attempts to pass another going in the same direction regardless of an approaching car coming from the opposite direction. (*Canestro v. Joplin-Pittsburg Rld. Co.*, 135 Kan. 337, 10 P. 2d 902.)

The foregoing sufficiently disposes of this appeal, but some of the justices, including the writer, would hold that if plaintiff's injuries did arise out of defendant's negligence, then we would be compelled to likewise hold that plaintiff was barred by her contributory negligence, as shown by findings 5, 8 and 10. Counsel for appellee contend that contributory negligence was not pleaded. It was not pleaded in the answer. So far as the record shows the defendant railway company was not apprised of the facts which would make the defense of contributory negligence available until plaintiff had put on her evidence. But when the evidence for plaintiff did make

that defense clear, it was properly raised by demurrer, and later by the railway company's motion for judgment on the pertinent special findings. We have held that when a petition does not plead the facts which would reveal a complete defense at law the defendant may deny generally and await the development of plaintiff's evidence which does reveal such complete legal defense, and demur to the evidence. Thus in *U. P. Rly. Co. v. Adams,* 33 Kan. 427, 6 Pac. 529, it was said:

"Where an action is brought to recover for personal injury, and the plaintiff's testimony shows that his own negligence contributed directly to the injury, he has failed to make out a *prima facie* right of recovery, and a demurrer interposed to his evidence should be sustained." (Syl. ¶ 1.)

In *Houdashelt v. State Highway Comm.,* 137 Kan. 485, 21 P. 2d 343, it was held:

"While the rule is that the burden is on the defendant to prove contributory negligence, it will not be interpreted to mean that if plaintiff's own evidence shows him guilty of such negligence as precludes a recovery the defendant cannot take advantage of it." (Syl. ¶ 3.)

Other recent cases have recognized this same rule of law. (*Parsons v. State Highway Comm.,* 146 Kan. 476, 480, 72 P. 2d 75; *Cruse v. Dole,* 155 Kan. 292, syl. ¶ 3, 124 P. 2d 470; *Central Surety & Ins. Corporation v. Murphy,* 103 F. 2d 117, headnote, ¶ 7.)

See, also, *Arnold & Co. v. Barner,* 100 Kan. 36, 163 Pac. 805; and *Mercantile Co. v. Rooney,* 114 Kan. 840, 220 Pac. 1048.

Turning to the cross-appeal, plaintiff complains of the trial court's refusal to permit her to amend her petition as quoted above in our statement of facts. Belated amendments to pleadings are addressed to the sound discretion of the trial court; and it would require a much stronger showing to warrant this court in holding that the trial court abused its discretion in this case, when the motion to amend was filed three days after the verdict.

We discern no basis for plaintiff's claim that it was entitled to judgment *non obstante* against the city, nor in overruling her motion for a new trial against the city. Neither party asked a new trial so far as concerned the railway company.

The judgment against the defendant railway company is reversed with instructions to enter judgment in its behalf. The judgment in favor of the city of Coffeyville is affirmed.

Smith, J., dissents.

WEDELL, J. (dissenting in part): Time will not permit writing an exhaustive opinion and I do not deem that necessary in order to state my general views on questions concerning which I differ with the majority. I do not concur in that part of the opinion which holds that the general verdict against The Union Electric Railway Company must be set aside. In my opinion the special findings of the jury and the evidence in the case do not compel that result. If that view is sound the general verdict, of course, must stand.

In my approach to the questions before us finding No. 13 may be set aside without affecting the general verdict. I do not agree, however, that it must be set aside on the record before us. I assume the trial court instructed on the phase of the case covered by that finding or it would not have permitted that question to be asked. The instructions are 'not before us. They are not objected to and they became the law of the case. I shall, however, not consider finding 13 as I do not consider it necessary to uphold the general verdict. I agree findings 3, 4 and 5 absolve the railway company of alleged failure to have the advancing freight car lighted and that findings 7 and 12 absolve the railway company of alleged negligence in failing to have an employee stationed at or near the front (east) end of the boxcar.

Having concurred in the majority opinion with respect to the matters designated there remains for determination, first, the question whether the track bed was defective or unsafe for the purpose of automobile travel. It is admitted the condition had existed for a long time prior to the collision. The jury was permitted to view this rail and track bed. It expressly found it to be defective and unsafe. (Findings 2, 6 and 11 [a].) I agree those findings must be read and construed together. That, however, is not the end of our duty. Those findings must be considered with other testimony which supports the general verdict but concerning which the jury was not asked to make specific findings. That evidence inheres in the general verdict. It will be discussed presently. In my opinion findings 2, 6 and 11 (a) are not inconsistent with the general verdict, and when considered with the testimony with respect to which no special questions were asked they clearly support the general verdict. In other words, in view of the record before us, I do not think we can substitute our judgment for that of the jury and say, as a matter of law, that the rail and track bed were not unsafe for automobile travel.

No exact or precise general rule can be laid down by courts which will determine what constitutes a defect, or unsafe condition, in every conceivable case. Every case of this character, therefore, must ultimately stand on its own bottom. A depression of the same identical dimensions may not constitute an actionable defect at one place and under certain circumstances as to one party, and yet it may constitute a grave and seriously unsafe condition at the same place under somewhat different circumstances as to another party. For example, a depression of one and one-half inches or even three inches in a railway bed in the middle of a street, which is not designed or intended for travel by pedestrians, may not constitute an actionable defect as to such a traveler. Furthermore, if a pedestrian nevertheless uses such portion of the street, he can far more readily observe the conditions and easily lift his feet over the depression. A street, including a railroad track thereon, is expressly designed for travel by motor vehicles and should therefore be so constructed and maintained as to be reasonably safe for the operation of such vehicles. The principle of law here involved has been clearly recognized in cases which hold that parkways are not primarily designed as thoroughfares for pedestrians as are sidewalks and crosswalks and that a greater degree of care is required to maintain sidewalks in a reasonably safe condition for pedestrians than is required with respect to parkways which pedestrians are not expected to use much. (*Register v. City of Pittsburg*, 139 Kan. 753, 33 P. 2d 173; *Mead v. City of Coffeyville*, 152 Kan. 799, 803, 107 P. 2d 711.) It, of course, does not constitute negligence for vehicles to enter upon a track bed in a street in order to pass a car. No act is more common and railway companies well know that fact. But a driver sitting behind a steering wheel cannot so readily observe the condition of tracks from the rear of another car which he is about to pass. Nor can he, when he observes a groove next to a rail in which the wheels of his car have become lodged, promptly lift the car out of the groove and set it over the rail in order to escape a collision with an oncoming vehicle. That fact is too plain, realistic and inescapable to require argument.

Some witnesses estimated the deepest part of the groove just inside of the north rail to be greater than three inches but that is the depth the jury found it to be and we must accept that finding. That finding, however, was only a part of the condition of the track bed. Bricks on the inside of the north rail were loose and worn. Plain-

tiff's testimony disclosed that at the widest place the groove between the north rail and the brick pavement in the vicinity of the collision was four and one-half inches wide. The jury was not asked concerning the width of this groove but that fact concerning the defective track bed inheres in findings 6 and 11 (a), and in the general verdict in favor of the plaintiff.

The testimony of Curtis, the driver of the car in which plaintiff was riding, was that the left, or south, wheels were against the inside of the north rail and slid forward when he attempted to cut the car to the north. That is the reason he could not get over the north rail. He observed the streetcar when it was seventy-five feet away. He then cut the car to the north just as sharp as it would turn. He said: "The front wheel and the hind wheel caught on the rails as I started to turn, and slid forward."

Cornett testified:

"When we got in front of Mathis' the car started sliding forward and we could not get off the track. The front wheel caught on the north rail and kept on sliding, when the front wheel broke loose the back wheel caught, and before we had a chance to get off the street car hit us."

In view of this realistic situation I am not willing to say, as a matter of law, that the jury was wrong in finding—"The street between the rails was defective and unsafe at the place where the collision occurred." (Finding 11 [a].)

The jury actually viewed the rail and rail bed. In view of what the jury actually may have observed, considered in conjunction with the testimony of plaintiff's witnesses, I cannot agree that finding No. 11 (a) constitutes a mere conclusion and is based upon no competent evidence.

The jury may well have believed the testimony of defendant's engineers that the proper depth of the flangeway for the wheels of its cars was one and one-half inches, but what does that fact have to do with the proper height of the brick pavement between the flangeways of the two rails? What does that fact have to do with a groove four and one-half inches wide on the inside of the rail? If the brick pavement had been level with the top of the rails and the width of the groove inside of the north rail had been only sufficiently wide to accommodate the flange on defendant's streetcars or boxcars, it would have made little or no difference how deep the flangeway was, up and down. The tires on the plaintiff car under those circumstances could not have dropped down into the groove. It was

the combination of the depth and width of this groove which permitted the tires to settle in the groove and against the rail, thus making it impossible to extricate the car in time to prevent the collision.

Was plaintiff, or the driver of the car, guilty of negligence which barred plaintiff's recovery. I do not think we can answer that question in the affirmative, as a matter of law. The jury found plaintiff was not guilty of negligence which contributed to her injury. (Finding 14.) It is true that finding is general in character but it is in harmony with the general verdict and both must stand unless other specific findings of ultimate fact are so inconsistent therewith as to compel us to set them aside. I do not think the jury made such specific findings. In my opinion findings 5, 8 and 10, relied upon by the majority, do not compel or justify such a result. Those findings merely disclose the lights on defendant's boxcar could have been seen for a distance of 600 feet and that plaintiff said or did nothing to warn the driver of the approaching cars.

If the driver of the car in which plaintiff was riding was not guilty of negligence, as a matter of law, then manifestly a recovery by plaintiff is not barred. What conduct of the driver bars recovery, as a matter of law? The driver testified he passed the car in front of them when it was approximately 200 feet east of Buckeye street. At that moment defendant's train was, of course, a considerable distance west of Buckeye street because it was traveling east and the collision occurred west of Buckeye street. It is, therefore, clear the collision did not occur while the plaintiff car was passing the car in front of it. In fact the collision did not occur until after the plaintiff car had traveled a short distance to the west side of Buckeye street. Obviously on the basis of this testimony the driver of the car was not guilty of negligence, in passing the car in front of him, which barred recovery as a matter of law. Was he guilty of such negligence thereafter? I think he was not. He testified the streetcar was about seventy-five feet away from him when he first observed it and that it was then approximately seventy-five feet west of Buckeye street. The jury expressly found the automobile had been traveling on the streetcar track for a distance of eighty-five feet before the collision occurred. (Finding 1.) In a distance of seventy-five feet, which was the distance the streetcar was west of the plaintiff car when the streetcar was first observed, the plaintiff car clearly had ample space to turn from the track and would

have succeeded in doing so except for the fact the south wheels of the car kept sliding forward against the north rail. It therefore follows that failure of the driver of the plaintiff car to see the lighted boxcar sooner cannot, as a matter of law, be said to have been the proximate or legal and efficient cause of the collision. Assuming contributory negligence of plaintiff or negligence of the driver of the car in which she ·was riding, although not pleaded by the defendant railway company, could be taken advantage of on defendant's demurrer to plaintiff's evidence, the demurrer was properly overruled as the case presents factual questions which only the jury could decide. It decided them. It is not contended the instuctions given by the trial court were in any particular improper or inadequate to cover every issue raised by the pleadings or properly presented by the evidence. The instructions, therefore, became the law of the case.

In passing I may say the fact that the jury found the city not negligent, although that finding may be wholly inconsistent with its finding against the railway company, presents no ·legal basis for setting aside the verdict properly rendered against the railway company. That principle is too well settled to require citation of authority. The railway company did not ask for a new trial and, in my opinion, the verdict and judgment against it must stand.

Hoch, J., joins in the foregoing dissenting opinion.