No. 21,808.

FRED L. EAMES, *Appellant,* v. FRANK CLARK, *Appellee.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Negligent Driving—Death of Boy—Competent Rebuttal Evidence.* In an action against the driver of an automobile for running into an eight-year-old boy and causing his death, the defendant was charged with negligence in going too fast. The plaintiff in making his case in chief introduced evidence that the car was going twenty-five to thirty miles an hour. The defendant testified that he was going from six to eight miles an hour when the boy ran in front of the car; that he put on the brake and the car skidded about ten feet; that when he saw that he had struck the boy he released the brake, and the machine rolled about twenty feet further, and was stopped by a new application thereof. In rebuttal, the plaintiff offered to prove by an expert witness, in answer to two hypothetical questions, that under the circumstances stated by the defendant the first application of the brake would have stopped the car within two feet if it had been going but six to eight miles an hour, and that the distance traveled before stopping indicated an initial speed of thirty to forty miles an hour. *Held,* that such showing was proper in rebuttal, but that one of the questions included a material assumption not warranted by the evidence.

5—104 KAN.

2. SAME—*Duty of Driver in Passing Pedestrian on Highway.* The statutory provision (now repealed) that "upon approaching . . . another vehicle or an animal or person outside of any village or city, the person operating a motor vehicle shall reduce the speed of such vehicle to a rate not exceeding eight miles an hour and shall not exceed such speed until entirely past such . . . vehicle, animal or person" (Gen. Stat. 1915, § 506) made it the duty of the driver of an automobile in passing a pedestrian in the highway to reduce his speed to eight miles an hour.

3. SAME—*Child Walking in Highway—Erroneous Instruction.* The refusal of an instruction relative to the care required of a child walking in the highway on the approach of an automobile, held to have been erroneous.

4. SAME—*Instruction—Rights of Pedestrian on Highway.* An instruction that it is the duty of a foot traveler on a highway, when he knows of the approach of an automobile in the traveled and beaten track, to step aside and out of such traveled and beaten track to avoid and prevent injury to himself, held to have been open to a construction requiring the pedestrian to leave the used portion of the highway, and, as so construed, to have been erroneous.

Appeal from Dickinson district court; ROSWELL L. KING, judge. Opinion filed January 11, 1919. Reversed.

*Edwin Anderson,* of Council Grove, *Frank A. Green,* of Herington, and *Frans E. Lindquist,* of Kansas City, Mo., for the appellant.

*C. E. Rugh,* of Abilene, for the appellee.

The opinion of the court was delivered by

MASON, J.: Edgar Eames, a boy not quite nine years old, while walking home from school along a country road, was killed by being run over by an automobile going in the same direction, driven by Frank Clark. The boy's father, Fred L. Eames, brought this action against Clark for damages on that account. A jury trial resulted in a verdict and judgment for the defendant, and the plaintiff appeals.

1. The petition alleged that the defendant was negligent in driving too fast and in failing to obey the statute requiring him to reduce his speed to eight miles an hour while undertaking to pass the boy. In making his case in chief, the plaintiff introduced evidence tending to show that the car was going from twenty-five to thirty miles an hour; that as it approached

the boy both were on the west or right-hand side of the road, which was wide enough for three cars to pass—that the smooth, beaten part of the road was a little more than thirty feet wide; that the boy started to the other side of the road, and the defendant did the same, the collision occurring on the east side; that no signal was sounded just before the accident; and that the defendant shortly afterward pointed out to a witness the tracks his car had made, and they showed it had skidded seven or eight feet.

The defendant testified that as he approached the boy, he sounded his horn; that the boy looked back and saw him, and at once turned to the right and got out of the road; that the boy stepped back into the west or right-hand track of the road and continued to walk south in that track; that as he came nearer he slowed down his machine, and when he saw the boy intended to hold the road, being then twenty or thirty feet from him, turned his car to the left and got over in the east track; that at this time he was running between seven and ten miles an hour, and when he got over into the east track about six or eight miles; that just as he was about to pass, the boy ran diagonally across the road in front of the car; that as soon as he saw him running he threw on the brakes and did everything he could to stop the car; that, thinking the boy might get across, he wheeled his car to the right, but that the boy struck the car between the left front fender and spring; that the boy had run ten or fifteen feet from the place where he was walking to where the car struck him; that the hind wheels slid or skidded eight or ten feet when he applied the brakes, and when he saw he had struck the boy he released the brakes to avoid shoving or rolling him if the hind wheel should go over him; that the car ran from twenty to thirty feet past the boy, when he applied the brake and stopped it; and that the car was not going over five or six miles an hour when it struck the boy.

In rebuttal, the plaintiff produced a witness who was in the automobile business—had operated automobiles for eleven years and was familiar with their speed—and asked him this question:

"Now, Mr. Lamb, assuming that on a dry road, practically level, an automobile weighing some thirty-six hundred pounds, under control, equipped with good brakes and otherwise in fair working condition and in running operation on said road, and the operator of the car immediately

upon discovering a child in the highway throws out the clutch and puts on the brake in an attempt to stop the car, going at the rate of from six to eight miles an hour, how many feet, in your opinion as an expert, would the said automobile go before it could be brought to a complete stop?"

An objection was made upon various grounds, and was sustained, the judge saying: "I don't think this is rebuttal testimony." The witness, if permitted, would have given the answer, "Two feet." A second question was then asked, having the same beginning, but concluding thus:

"And skidded from eight to ten feet; that thereafter, he ran over the child, and, in so running over him, released the brake, and immediately after running over said child the car skidded for an additional space of thirty feet before it could be brought to a full stop; at what speed, in your opinion as an expert, was the said car going at the time that said clutch was thrown out and said brakes applied?"

An objection to this question upon the ground, among others, that it was not rebuttal, was made and sustained. The answer would have been, "Thirty to thirty-five miles an hour." These rulings are complained of.

It is true the ultimate purpose of the excluded evidence was to support the claim of the plaintiff that the car was going too fast, and the rate of speed was one of the matters sought to be established by his evidence in chief. But in offering the expert witness he was undertaking to counteract or impair the effect of the defendant's testimony, not by merely producing cumulative evidence—more evidence of the kind he had already introduced—but by showing the falsity of the specific testimony attacked. This he could not have done sooner, for he could not anticipate the details of the defendant's narrative. It is true that the original evidence in behalf of the plaintiff included statements with regard to the speed and action of the car, but only the defendant could know positively just when the brake was applied and taken off, and what movements had followed. When his version of these matters was laid before the jury, its interpretation as bearing upon the question of speed, by one competent to form a judgment, became of obvious importance. Moreover, the evidence offered tended to contradict the testimony of the defendant by showing it to be inconsistent with itself. "For matters *properly not evidential until the rebuttal,* the proponent has a *right* to put them in at that time, and they are therefore not subject to the discretion-

Eames v. Clark.

ary exclusion of the trial court." (3 Wigmore on Evidence, § 1873, p. 2477.) We conclude that the evidence was admissible in rebuttal.

In the appellee's brief it is argued that the hypothetical questions were properly ruled out because they contained the assumption that the road at the place in question was "practically level," whereas several witnesses had testified that it was a little downhill. One of them said she thought it was "a little bit downhill"—that it was nearly level—almost level. We do not think the variance between almost or nearly level and "practically level" is sufficient to warrant an approval of the rejection of the evidence, inasmuch as the attention of neither court nor counsel appears to have been directed to it at the time, the ruling having been placed upon the ground already discussed. A further objection is urged in the brief to the second of the two hypothetical questions, on the ground that it assumed that the car skidded after striking the boy, the evidence being that the brake had then been released and that the car rolled until the defendant again applied the brake and stopped it. This was such a material variation as to warrant a rejection of the question.

2. The court refused to give an instruction to the effect that it was the duty of the defendant on approaching the boy to reduce his speed to a rate not exceeding eight miles an hour and not to exceed such speed until entirely past him. The statute then in force (Gen. Stat. 1915, § 506, superseded by Laws 1917, ch. 74, § 5) contained this provision:

"Upon approaching railroad crossing and intersection of highways, or a bridge or a sharp curve or a steep descent, or another vehicle or an animal or person outside of any village or city, the person operating a motor vehicle shall reduce the speed of such vehicle to a rate not exceeding eight miles an hour and shall not exceed such speed until entirely past such intersection, bridge, curve, descent, vehicle, animal or person."

It has been held that this statute is not to be construed as forbidding the driving of an automobile at a higher rate of speed than eight miles an hour while passing a horse-drawn vehicle going in the same direction. (*State v. Pfeifer*, 96 Kan. 791, 153 Pac. 552.) This decision was possibly interpreted by the trial court as nullifying the statutory requirement that the speed of a motor vehicle shall be reduced to eight miles an

hour when passing a person on foot in the highway. It was not so intended, and the reason given for it—that the statute con-. templates the passing of vehicles going in the same direction, and this would be rendered practically impossible by a speed limit of eight miles—does not apply to the case of a pedestrian. We hold the omission to instruct upon the effect of this part of the statute to have been erroneous.

3. Complaint is also made of the refusal of the court to give an instruction reading:

"You are further instructed that children of tender age are not held to the same strict accountability as persons of full age and experience, but are required to exercise such prudence and care as persons of their age, experience, knowledge and intelligence are ordinarily expected to exercise under like circumstances."

The jury were properly instructed as to the additional precaution on the part of the defendant made necessary by the boy's youth, but the only instruction they were given with regard to the question of the boy's contributory negligence as affected by his age was in these words:

"If the jury find and believe from the evidence that he was of sufficient age, intelligence and understanding as to know that he should get out of the highway in case of the approach of an automobile and that if he did not do so that he was liable to be struck and injured, and if he did not do so, if he knew or might know that the automobile in question was coming, by the exercise of proper care, he would in such case be guilty of contributory negligence under other instructions herein defining contributory negligence."

This instruction, in our judgment, did not cover the field indicated by that requested. It limited too closely the effect of the boy's immaturity. It is also open to objection as assuming that if his mind was mature enough to appreciate the danger of the situation, it was his duty to get out of the highway on the approach of the automobile, a question involved in the next assignment of error to be considered.

4. The court gave the following instruction, of which complaint is made:

"You are instructed that it is the duty of a foot passenger traveling upon a public highway outside of a city or village when he knows of the approach of an automobile coming in the traveled and beaten track upon such highway to step aside and out of such traveled and beaten track to avoid and prevent injury to himself when such automobile is approaching and passing him, and if he does not step aside when he

Eames v. Clark.

knows such automobile is coming and approaching him to avoid being struck by the same, and is struck and injured in such case, he would be guilty of contributory negligence and could not in such case recover for his injuries even though the party running and operating such automobile was guilty of negligence upon his part in the operating and running of such automobile."

Foot travelers have equal rights upon the highway with the drivers of vehicles, and the usual statement of their obligation is that they must use what amounts to reasonable care in the particular circumstances. (Note, 51 L. R. A., n. s., 992.) It may be that as a matter of law reasonable care requires a pedestrian who is about to be overtaken by an automobile to step to one side and allow it to pass, so that it will not have to turn out and go around him. And if the road (or the traveled portion) is so narrow that one or the other must get outside of it in order that the car may pass, doubtless this should be done by him who is on foot, because he can do it the more easily. But where the beaten track is wide enough for several vehicles to pass (as seems to have been the case here) there can be no hard and fast rule that pedestrians must get completely outside of the highway or of the traveled portion of it. It may not have been the intention of the trial court to announce such a rule, but the language used is sufficiently open to that interpretation to suggest its modification upon a new trial.

A number of other requested instructions were either covered by the general charge or relate to the matters already discussed. An objection to a question asked of a witness on cross-examination seems to have been properly sustained, as the matter referred to had not been touched upon in the direct examination.

The judgment is reversed, and the cause is remanded for a new trial.