No. 35,980

Louise Moler, *Appellee*, v. Jabin Cox, *Appellant*.

(149 P. 2d 611)

Opinion filed June 10, 1944.

*Allen B. Burch,* of Wichita, argued the cause, and *W. C. Norton,* of Wichita, was on the briefs for the appellant.

*Clarence R. Sowers,* of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was an action by a widow to recover damages for the wrongful death of her husband who was killed when struck by defendant's truck, which was operated by one of his employees. The general verdict was for the plaintiff and the defendant, Jabin Cox, appeals from the order overruling (1) his demurrer to plaintiff's evidence; (2) his motion for judgment on the special findings which he claimed showed the deceased had been guilty of contributory negligence as a matter of law; and (3) from the order sustaining plaintiff's motion for a new trial.

Appellee insists the only order properly before us for review is

the ruling on defendant's demurrer. The record before us fails to disclose any particular reason, or reasons, the court gave, if any, for granting a new trial. The fact, however, that a new trial was granted compels us to conclude the trial court must have been dissatisfied with the general verdict, or some parts of the special verdict, or perhaps with both verdicts. Examination of the verdicts furnishes some basis for such dissatisfaction. If in the judgment of the trial court the verdict should not stand it was, of course, its duty to set it aside and grant a new trial. The order granting a new trial vacated both verdicts. It follows the ruling on defendant's demurrer is the only ruling this court can reach for review.

Appellant's demurrer was upon the grounds the plaintiff's evidence was insufficient to prove a cause of action in favor of plaintiff and against the defendant and that plaintiff's evidence affirmatively disclosed the deceased was guilty of contributory negligence which barred recovery.

There is no contention by anyone that appellant's evidence supplied any defects or insufficiency in appellee's evidence. We therefore are required to notice only testimony introduced on behalf of appellee. The truck driver, Wilbur Hill, was the only eyewitness to the accident and the appellee used him as her witness. The pertinent portions of his testimony, in substance, were:

The accident occurred on the night of December 24, 1941; he was driving a Ford truck in an easterly direction on highway No. 96 north of Wichita; the truck was a single unit, all on one frame; the length of the truck from bumper to bumper was approximately twenty feet; the body of the truck extended seventeen inches over the cab on each side; the total width of the widest part of the truck was seven and one-half feet; he could not state exactly how far the body of the truck extended over the fender line; the deceased was walking on the blacktop with the traffic, that is, he was walking east, the same direction the truck was traveling; there was a sanded shoulder on the south side of the highway which was about four feet wide and furnished a sufficient place to walk; the deceased was walking on the blacktop and at a point approximately three or four feet from the south edge thereof; he was wearing dark clothes; some cars, probably three to five, were approaching from the east; the nearest car so approaching was probably 150 feet removed; the lights on the oncoming cars were fairly bright and made a bank of lights but he did not think they obstructed his vision; he kept a

constant lookout ahead of him; the bright downward beam lights of his truck focused on the deceased approximately one-half of the distance between his feet and shoulders when he noticed the deceased; with those lights functioning he could ordinarily see for a distance of approximately eighty to eighty-five feet; by reason of the dark clothes the man wore and the blacktop pavement he did not see the deceased until he was approximately ten feet away; when he saw the deceased he just looked like a dark cloud; he set the brakes as soon as he could and at the same time swerved the truck to the northeast; the front wheels of his truck crossed the center of the highway; he immediately swung back to the south side of the highway to miss the oncoming traffic; prior to the accident he had been traveling approximately in the center of the south lane; the blacktop at the place of accident was eighteen feet wide according to the men who stepped it off; when he first noticed the deceased he was at a point just a little to the left of his right headlight; he missed the deceased entirely with the front part of the truck but hit him with the side of the truck at a point near to the right rear corner thereof.

The truck driver further, in substance, testified:

The pavement was dry and the brakes on his truck were in good mechanical condition; he was traveling under thirty-five miles an hour; at that speed he could ordinarily stop within fifty feet; by reason of being obliged to swerve the truck to the northeast and back to the southeast he was unable to stop in less than sixty feet on this occasion; that is the distance within which he did stop; the deceased was not walking on the south shoulder; he was on the highway with his back turned to him; he paid no attention to the approach of the truck; the deceased made no attempt to step aside; he did everything he possibly could to miss the deceased; there was no time to stop; he did not slide the wheels of the truck as he swerved around the deceased; there was a little driveway or culvert to the south of the highway; he did not see the driveway as he hit the deceased but he saw a metal mailbox on the south side of the highway; (a photograph discloses the mailbox was very near the edge of the shoulder) the driveway leading to the south was west of the mailbox; he struck the deceased approximately twelve feet west of the mailbox; the deceased at that time was just about on the west edge of the driveway; the mailbox was of light color but it was not in his line of vision as he came east; he did not notice the mailbox

until he swerved to miss the man; he watched the deceased as he came along there and when he swerved to miss the man he looked around and the mailbox and the man were there together; he did not remember that the deceased wore a hat; when he stopped the truck he went back to the deceased; when he found him his head was approximately three or four feet south of the edge of the pavement; his head was to the north and his body was in a southeasterly direction with his feet approximately one foot from the east edge of the culvert, or driveway.

Don Hyner, an ambulance driver, in substance, testified:

He arrived at the scene of the accident on West Twenty-ninth street between 6:30 and 7:00 p. m. and saw a man lying in a driveway on the south side of the road; he was approximately two or three feet from the blacktop with his head to the northeast and his feet to the southwest; he saw no hat there anywhere but he did not look.

Appellee, the widow of the deceased, testified, in substance:

Her husband was sixty years of age and had worked in the oil fields; on the night of the accident she was waiting for her husband at the home of a neighbor of the people for whom she had been working; she saw his coat at the hospital that night; it was a gray coat; she did not see his hat; it was not found anywhere at the time of the accident and has never been found; she did not see him before the accident but knew he wore a light gray hat; she knew that for the reason he always wore it when he dressed up to come to town; her husband's car was found two blocks west of where he should have turned to go to the house where she was working; when they found the car it was broken down and would not run.

Vern Scott, deputy sheriff of Sedgwick county, in substance, testified:

On December 24 at around 7:00 p. m. it was dark in Wichita; he went to the scene of the accident that night after the deceased had been taken to the hospital and the truck had been removed; the pavement was dry; he did not look for any skid marks on the pavement and did not know whether the brakes on the truck had been applied or not; he saw the deceased at the hospital and he was wearing dark clothes.

Paul Drescher, member of the state highway patrol, in substance, testified:

He arrived at the scene of the accident around 8:30 p. m.; he

attempted to determine whether the truck driver had applied his brakes but he could find no skid marks; the road was straight and level; the scene of the accident was in a residential district; there were no defects in the highway; there were lights at different places along there; he could not tell what the width of the blacktop was at the point where the driveway from the south came into the blacktop; the shoulders were not very wide but he could not tell how wide they were or whether they were chat, gravel or just dirt and grass; there is normally a heavy traffic on Twenty-ninth street and there was such traffic on the night of this accident; cars were coming along there continually.

It was stipulated there were no sidewalks along the highway.

Appellee contends the demurrer to her evidence was properly overruled. She asserts the truck driver was required to keep a lookout for objects on the highway and to articulate his speed with his ability to see and to stop, or turn aside, before colliding with objects on the highway. She insists that failure of the truck driver to do so established his negligence as a matter of law and in support of that general rule cites *Curtiss v. Fahle,* 157 Kan. 226, 139 P. 2d 827, and numerous other cases. In this connection counsel for appellee emphasizes appellee's testimony that her husband wore a light gray hat on the night of the accident and also stresses the testimony of the truck driver that ordinarily he could see clearly for a distance of eighty to eighty-five feet and that he could stop within a distance of fifty feet.

Appellant concedes the general rule above stated but contends it does not apply to a dangerous obstruction that suddenly appears before a driver which, in the exercise of reasonable care, he could not have seen and avoided. In support of this recognized exception to the general rule he cites *Hayden v. Jack Cooper Transport Co.,* 134 Kan. 172, 5 P. 2d 837; *Fleming v. Hartrick,* 100 W. Va. 714, 131 S. E. 558; and *Goodman v. Wisby,* 152 Kan. 341, 103 P. 2d 804. In the Goodman case numerous cases are collected in which exceptions to the general rule are discussed. The Goodman case did not constitute an exception to the general rule but the court there said: "Exceptions to the general rule are grounded on the doctrine that the exercise of ordinary care would not necessarily have prevented the accident." (p. 345.)

In the Fleming case, *supra,* the West Virginia court held:

"The general rule requiring the driver of an automobile to maintain a speed

sufficiently slow to have such control of it that he can stop it within the distance in which he can plainly see an obstruction of danger, does not apply to a case where a dangerous situation which he has no reason to expect suddenly appears in front of his car." (Syl. ¶ 3.)

In the Hayden case we held:

"The rule that one driving an automobile in the nighttime must so operate his car that he may stop it within the range of vision of his headlights, is applicable in cases where vehicles or other objects on the highway may be seen by the aid of proper lights, but where an obstruction was of such a character and so placed that a motorist driving his car properly equipped with lights and brakes, at a moderate speed, is unable to see an obstruction in time to prevent colliding with it, and is otherwise free from negligence, he cannot be held guilty of contributory negligence as a matter of law." (Syl. ¶ 1.)

To the same effect are *Deardorf v. Shell Petroleum Corp.*, 136 Kan. 95, 12 P. 2d 1103; *Sponable v. Thomas*, 139 Kan. 710, 720, 33 P. 2d 721, and others which might be cited.

Appellant recognizes the fact that the general rule is a rule of law and that if the facts are such as to bring a case within an exception to the general rule then the exception merely operates to make the question of the driver's negligence one upon which the jury must pass. (*Sponable v. Thomas*, supra, 721.) In other words appellant concedes if the testimony adduced in appellee's behalf disclosed the truck driver was negligent in any respect then a jury question was presented. Appellant, however, insists that in the instant case the truck driver was appellee's witness and that his testimony discloses that, in the exercise of due care, it was impossible to see the deceased sooner than he did see him and to avoid the accident. Appellant directs attention to the following uncontradicted testimony of the truck driver:

He kept a constant lookout on the road ahead of him; he was meeting traffic from the east, three or five cars; while the lights on the oncoming cars were fairly bright he did not think they blinded him or obstructed his vision; his bright downward lights were functioning; by reason of the dark clothes of the deceased and the blacktop highway he could not see the deceased sooner; when he observed the deceased the lights of the truck focused on him about halfway between his feet and shoulders; after discovering the deceased on the highway he did not have time to stop; thereafter he did everything he possibly could to avoid striking the deceased by applying his brakes, swerving to the left and returning to his lane of travel before meeting the oncoming traffic.

Appellant contends appellee is bound by this uncontradicted testimony of her own witness. He asserts this is not the kind of a case in which a court or jury may disregard or disbelieve the testimony of this witness for the reason that if they do so there is nothing except pure conjecture upon which to base a verdict. He therefore contends the evidence adduced on behalf of appellee not only failed to show the truck driver was guilty of negligence but affirmatively disclosed he was not guilty of negligence and that his demurrer should have been sustained.

Appellant further earnestly contends his demurrer also should have been sustained for the reason that appellee's evidence clearly discloses the deceased was guilty of contributory negligence as a matter of law. If a plaintiff's own evidence discloses contributory negligence a defendant may, of course, take advantage thereof on demurrer upon the ground that plaintiff has failed to make out a prima facie right of recovery. (*U. P. Rly. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Houdashelt v. State Highway Comm.*, 137 Kan. 485, 492, 21 P. 2d 343.) Appellant concedes pedestrians have a right to use a public highway but he contends they must exercise that right with due regard to the rights of others who are using it. (*Eames v. Clark*, 104 Kan. 65, 71, 177 Pac. 540; *Stotts v. Taylor*, 130 Kan. 158, 285 Pac. 571; *Hendren v. Snyder*, 143 Kan. 34, 39-40, 53 P. 2d 472.) He asserts appellee's undisputed evidence shows the deceased did not exercise such rights with a due regard to the rights of others who were then using the highway at the place in question. The evidence relied upon by appellant in that respect is, in substance, as follows:

The shoulder on the south side of the blacktop was sanded and about four feet wide; it constituted a sufficient path for pedestrians to walk; highway No. 96 was a busy trafficway and the traffic was heavy the night of the accident; cars were passing continuously; three to five lighted vehicles were approaching the deceased and appellant's truck from the east immediately preceding the accident; the deceased wore a dark suit and walked on a blacktop pavement; he was walking with the eastbound traffic and on the blacktop, three or four feet from the south edge thereof; although the cars were approaching from the east, the nearest being only approximately 150 feet away, the deceased made no effort whatever to step out of appellant's lane of traffic.

Appellant insists this evidence clearly discloses the deceased was

negligent in remaining on the blacktop anywhere under the circumstances described, even if he did wear a light gray hat with a dark suit, or a gray suit, which blended into the highway. Furthermore he contends, under the existing circumstances, the deceased was especially negligent in walking on the wrong side of the road, that is, on the south side with the eastbound traffic behind him, instead of on the north side where he could go against the traffic and observe it. (*Hendren v. Snyder*, 143 Kan. 34, 40, 53 P. 2d 472.)

On the other hand, appellee contends there was evidence from which the jury might conclude the deceased was not walking on the blacktop, but was walking on the south shoulder. She argues that if the deceased had been on the blacktop he would have been thrown toward the center of the highway or to the northeast which was the direction in which the truck was headed as it swerved around the deceased. Appellee also argues the location of the deceased on the south side of the road, after he was hit, tends to indicate the deceased was not walking on the blacktop. She calls attention to the fact that the mailbox was located immediately south of the south shoulder. She stresses the fact that the truck driver testified with respect to what he saw as he swerved around the deceased and that he said, "I looked around and the mailbox and the man were there together."

With respect to the last quoted statement we have examined the transcript of the evidence instead of relying entirely upon the abstracts. From our examination we are entirely satisfied that statement is not fairly open to the interpretation that the truck driver intended to imply the deceased was then by the mailbox, which was south of the south shoulder of the highway. We think the witness clearly meant he saw the man and mailbox at the same time. This interpretation harmonizes with all of the other testimony of the witness. The interpretation appellee attempts to place upon the statement is in direct conflict with all other testimony of the witness and with the actual physical facts. It is entirely clear the deceased could not have been standing or walking by the mailbox immediately before he was hit. The mailbox was east of the south driveway which came into the blacktop. Under the uncontradicted evidence the deceased was struck when on the blacktop and approximately twelve feet west of the mailbox or at a point about even with the west edge of the south driveway. After he was struck he was thrown to the southeast in the direction of the mailbox and

onto the south driveway. Clearly he could not have been by the mailbox immediately before he was hit. He was, however, directly in the truck driver's line of vision as the truck driver observed the mailbox and that must have been what the truck driver meant when he said he looked around as he swerved and "the mailbox and man were there together." Moreover there is not the slightest evidence or indication of any trace or mark of any kind or character which would tend to support the theory the truck traveled on any portion of the south shoulder which would have been necessary in order for any portion of the body of the truck to reach the deceased at the mailbox. It should also be observed the petition did not charge the truck traveled on the south shoulder.

While testing the ruling on a demurrer to evidence we, of course, cannot compare or weigh evidence and we are not doing so in the instant case. We are only interpreting the evidence to which appellee is giving an unwarranted meaning. Although the jury returned a general verdict for appellee we pause to note that the jury did not construe the truck driver's statement as appellee attempts to construe it. It expressly found the negligence of the deceased consisted in the fact he—"did not observe the traffic coming from the west going east." Clearly if the deceased had been at the mailbox when hit there would have been no need or occasion for him to observe the traffic from the west. Furthermore appellee's argument that the mere location of the deceased, after he was hit, indicates he was struck while on the shoulder is too remote and speculative to form the basis of a verdict. In *Hendren v. Snyder,* 143 Kan. 34, 53 P. 2d 472, a case involving personal injuries to a pedestrian while walking near the edge of a highway and whom the driver of the car testified he did not see, we held:

"In an action for damages for personal injuries sustained in an automobile casualty, a judgment for plaintiff predicated upon mere conjecture as to defendant's negligence cannot be permitted to stand." (Syl.)

Various cases of injury to pedestrians and their rights on public highways are carefully discussed and ably treated in the Hendren case. We do not deem it necessary to repeat the facts related and conclusions reached in those cases as that already has been done in the opinion in the Hendren case.

In the opinion of the majority the Hendren case is not controlling as to the speculative character of the truck driver's negligence. While, as indicated, we do not agree with appellee's interpretation

of some of the truck driver's testimony or with the conclusion appellee draws from the mere location of the deceased after he was struck, we think the evidence, assuming the deceased was walking on the blacktop, made the question of the truck driver's negligence one for the determination of the jury. The jury was not bound by the testimony of the truck driver. It had the right to consider the circumstances and determine for itself whether the truck driver was negligent. We also think the question of contributory negligence of the deceased was a proper question for the determination of the jury.

It follows the judgment must be affirmed. It is so ordered.

WEDELL, J. (dissenting): I think appellee is bound by the testimony she adduced in her own behalf. In my opinion that testimony defeats her recovery. In the first place, the testimony brings this case fairly within the exception to the general rule under which the truck driver would have been negligent as a matter of law. In the second place, that testimony establishes the prima facie defense to the charge that the truck driver was negligent in that it tended to show tne truck driver in the exercise of reasonable care could not have avoided the accident.

Of course, appellee might have introduced other testimony had the facts warranted it, as is frequently done, to show that under the circumstances related by the truck driver he could have, or should have, seen the deceased in time to avoid the accident. Appellee did not see fit to do so and I think she is bound by the testimony she adduced.

On the other hand, if we assume the jury disbelieved the testimony of the truck driver, what evidence is there upon which to rest a verdict? There is none except evidence of an accident and pure speculation as to how it occurred. That is not a sufficient basis upon which a verdict can be permitted to stand under the numerous authorities cited in *Hendren v. Snyder*, 143 Kan. 34, 41, 53 P. 2d 472, and many other cases which might be cited.

I think the demurrer should have been sustained upon another ground. It is not necessary to repeat the evidence touching the negligence of the deceased. It seems to me this is one of the clearest cases of contributory negligence that can be imagined. How the deceased could remain on a blacktop highway at a point three or four feet from its south edge and yield no portion of the highway,

which was only eighteen feet wide, when three to five cars were approaching from the east and the nearest car was only 150 feet away and when a lighted truck was approaching from behind him without being negligent as a matter of law, I am unable to understand. And this is especially true when the undisputed evidence discloses there was a sanded shoulder south of the blacktop approximately four feet wide which constituted a sufficient place upon which to walk.

THIELE and HOCH, JJ., join in the foregoing dissenting opinion.