No. 36,746

JOHN M. RANNEY et al., *Appellees* and *Cross-appellants*, v. THE CAMDEN FIRE INSURANCE ASSOCIATION et al., *Appellants*.

(179 P. 2d 190)

Opinion filed April 5, 1947.

*Kirke W. Dale,* of Arkansas City, argued the cause, and *J. B. Patterson,* of Wichita, *Donald Hickman* and *John W. Warren,* both of Arkansas City, were with him on the briefs for the appellants.

*W. L. Cunningham* and *Wm. E. Cunningham,* both of Arkansas City, argued the cause, and *A. M. Dean* and *D. Arthur Walker,* both of Arkansas City, were with them on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action by three plaintiffs who were owners of certain real estate and improvements to recover on policies of insurance issued by the thirteen defendant insurance companies. The parties will be referred to hereafter as the plaintiffs and defendants. At the trial the defendants demurred to plaintiffs' evidence and the demurrer being overruled, the trial proceeded. At the conclusion of all of the evidence, the plaintiffs moved for judgment in their favor, which motion was denied. Plaintiffs then requested the trial court to give the jury a certain instruction with reference to the burden of proof, and the defendants requested the trial court to instruct the jury to render a verdict in favor of defendants, both of these requests being denied. Without detailing intervening steps, it may be said that the jury were unable to agree

on a verdict and were discharged and a mistrial was declared. Thereafter the defendants appealed from the rulings on their demurrer, on their motion for judgment and on the trial court's refusal to direct the jury to return a verdict in their favor. The plaintiffs filed a cross-appeal from the rulings of the trial court refusing to give their requested instruction, and in giving certain instructions.

We observe first that if the trial court erred in refusing to give requested instructions or in giving instructions, the errors were trial errors, and are not now subject to appellate review. The ruling on the demurrer of defendants to the evidence of plaintiffs is appealable. Whether the ruling on plaintiffs' motion for judgment is appealable need not be presently decided.

A short review of the petition discloses that plaintiffs secured issuance to them of sixteen policies of insurance by the thirteen defendant companies, all of form similar to one issued by the Home Insurance Company, a copy of which was attached to the petition as an exhibit, and, as pleaded, and as shown by the copy attached, the policies were what is commonly called standard fire insurance policies, and insured the premises described against direct loss or damage by fire. Attached to the policies were supplemental contracts under which the coverage was extended to include direct loss or damage by explosion. This supplemental contract contained special stipulations, terms and conditions applicable to explosions including the following:

"This company shall not be liable for loss or damage by explosion originating within steam boilers,"

and other designated equipment and machinery. The petition further alleged that:

"Thereafter, and while each of said policies were in full force and effect, and on the . . . day of September, 1941, these plaintiffs suffered a direct loss and damage to said buildings by fire, which later resulted in an explosion in the steam boiler in said building, located on the rear of Lot Nine (9), Block eighty (80), Arkansas City, Kansas; that said fire was accidentally caused, by no fault or neglect of plaintiffs, but by gas accidentally escaping from pipes in said building, and becoming accidentally ignited, without fault or negligence on the part of these plaintiffs, the exact cause of such escape, or the ignition thereof, being unknown to these plaintiffs; said gas so accidentally escaping and becoming ignited thereafter, while still burning directly caused an explosion in the steam boiler located in said building said fire originating near to and in the neighborhood of said furnace in the building on the rear of the above described Lot 9, in which building the explosion occurred."

It was further alleged that the building on the rear of Lot 9 was entirely demolished and destroyed, to plaintiffs' damage in the sum of $500 and that "as a direct result of said fire and resulting explosion" the division wall between Lot 9 and Lot 10 was demolished and destroyed, damaging plaintiffs in the further sum of $500. The prayer of the petition was for judgment for $1,000 and attorneys' fees.

For present purposes, it may be said the defendants admitted execution of the policies and denied generally. The answer was later amended to plead the provision in the supplemental contract that the company should not be liable for loss or damage by explosion originating within steam boilers. Plaintiffs' reply was a general denial.

The question presented by the defendants' demurrer to the plaintiffs' evidence is whether that evidence disclosed that plaintiffs suffered a direct loss and damage to their buildings by fire which later resulted in an explosion in the steam boiler on Lot 9, the fire being caused by gas accidentally escaping and becoming ignited and causing the explosion, as more fully appears from the allegations of the petition quoted above. In order that the evidence as to cause may be more readily followed, we first review the evidence as to the situation of the buildings, their occupancy and equipment.

The above Lot 9 was immediately north of Lot 10, both lots facing east on Summit street and abutting on an alley to the west. On Lot 10 was a two-story building which extended from the street to the alley, and the ground floor of which was occupied by a dry cleaning establishment operated by one Clingman. In the front or east end of the room was a counter, and about midway back there was a low partition and to the west was some equipment. At the rear there was a door leading to the alley. The north wall of this building was constructed of hollow tile. On the east end of Lot 9 was a one-story building with which we are not concerned. To its west was a small building, used by Clingman as a cleaning room, and we are not concerned with it. Further to the west and next to the alley was another small building, its size not being stated. Its south wall was the north wall of the building on Lot 10 and there were no doors, windows or other openings in the wall between the two rooms. The small building on Lot 9 contained two boilers, one of which was not used and with which we are not concerned. The other boiler was about six feet long and three

feet in diameter and was set lengthwise in an east and west direction along the common wall, and it was fired by gas which was piped in from the alley. There was no pilot light, a torch was used to light the burners, and an ordinary stop valve was used to turn on the gas.

Insofar as the alleged fire and explosion was concerned there was no contention but that the boiler exploded. The plaintiffs' evidence showed the following: Ed Clingman, operator of the dry cleaning establishment, came to work a little before 8:00 o'clock a. m. on September 22, 1941. Two of his employees, who did not testify, and his wife, who did testify, were there. There was an explosion about 8:00 o'clock. He and his wife were at the counter in the front end when he noticed a flash. His first thought was that it was a fire. The flash came from the door leading out to the alley. He told his wife to call the fire department and he took a fire extinguisher and went to see if anyone was injured. A large hole had been blown in the wall between the south building and the boiler room, and a table in the south building had been pushed over and equipment was jammed together. He also stated that in lighting the boiler they customarily used a torch, a cloth wrapping on a stick, and sometimes used a match and that there was some of that equipment there in the boiler room, that he didn't know for how long, but they kept a soaked rag.

Mrs. Clingman testified she was at the place on the morning of September 22, 1941; that Davis, a colored boy, usually lighted and looked after the boiler; that she had been there only a few minutes and was talking with her husband and saw a flash and heard the explosion; that the flash came through the partition between the cleaning room and the boiler room and at the time the flash occurred and she heard the noise, the wall began to come in.

Joe Hutchinson, assistant fire chief, testified he took fire trucks and answered the call, and was at the above described place and had lines run in about four minutes. He went in the building which housed the boiler and saw no big blaze. There was a box along the west side of the boiler room about two feet square filled with rags, paper and trash which was on fire; that he did not know what started the fire, all he knew was there was a fire there and it must have been burning awhile for it had burned down in the box; that it wasn't a big fire, about two or three inches high. He further testified that he checked for gas leaks and didn't find any

and that the gas had been shut off; that he just walked around to see if any pipes had burst or anything of that kind. He didn't find any pipes open but didn't try any pipe by lighting matches.

Gerald Thomas, a fireman, testified about seeing a ball of paper or rags which was smoldering outside the boiler room and which he extinguished. Dick Frantzen testified that after the fire department left he visited the scene and saw a small particle like a rag or burlap sack which was barely smoldering. It was east and a little north of where the boiler had been.

Without reviewing details, it may be said the evidence showed that the explosion caused destruction of the boiler room and a part of the wall between that room and the building on the south.

It may here be noted that in plaintiffs' brief some reference is made to what certain exhibits show, although it is not stated who offered the exhibits. In the abstract and counter abstract no reference is made to any exhibits. As there is no contention that defendants' evidence supplied any defect there may have been in plaintiffs' proof, we ignore defendants' evidence and plaintiffs' evidence in rebuttal.

The gist of defendants' contention their demurrer should have been sustained is that plaintiffs' evidence not only failed to show that there was a fire which later resulted in an explosion in the steam boiler, as pleaded, but that there was no evidence of any fire causing damage; that the plaintiffs affirmatively sought to recover upon the theory escaping gas ignited and the fire thus created caused an explosion in the steam boiler; and that there was no evidence to sustain such a theory.

The gist of plaintiffs' contention the trial court's ruling on the demurrer should be sustained is that the applicable law and not the pleadings determine the burden of proof that if the explosion originated in the boiler and for that reason defendants were not liable, it was because of the exception to that effect in the policies of insurance; that in such case the burden of proof was upon the defendants who may not question plaintiffs' proof for that particular reason, and that otherwise their proof was sufficient to prove a fire and an explosion following the fire. It is to be observed that the petition did not allege simply that there had been an explosion and consequent damage, nor was the proof so directed, as is clearly disclosed by the review made of the pleadings and of the evidence.

Plaintiffs devote considerable space to the rule that when a defendant in an action on an insurance policy seeks to avoid liability on the ground that the loss is covered by an exception in the policy, the burden is upon him to prove the fact which brings the case within the exception. Defendants concede that is the general rule, and we shall not discuss it. Defendants do contend however that where the plaintiffs seek to recover on a theory that escaping gas became ignited and that the resulting fire caused an explosion in the boiler, they must prove their allegations, and that they did not do so.

We shall not discuss at any length the question of burden of proof. Regardless of whose duty it was to bring forth the evidence, it was brought forth, and as brought forth is the subject of our consideration. Although the type of action was not the same, this court has repeatedly held that while the burden is upon the defendant to prove contributory negligence, if plaintiff's own testimony shows him to be guilty of negligence, the defendant may take advantage by demurrer. See *Crowe v. Moore*, 144 Kan. 794, 797, 62 P. 2d 846; *Parsons v. State Highway Comm.*, 146 Kan. 476, 480, 72 P. 2d 75; *Cruse v. Dole*, 155 Kan. 292, 295, 124 P. 2d 470; *Slaton v. Union Electric Ry. Co.*, 158 Kan. 132, 141, 145 P. 2d 456; *Moler v. Cox*, 158 Kan. 589, 595, 149 P. 2d 611; and cases cited. Under the reasoning of the above cases if plaintiffs' proof showed the exception in the policy applied, the defendants could raise the question by a demurrer to plaintiffs' evidence.

In the briefs of both parties are definitions of friendly fires and hostile fires, but in view of the evidence we need not pursue that matter fully. Certainly a fire purposely placed under the boiler would be a friendly fire and one which might be caused from leaking gas lines becoming ignited would be hostile.

As has been stated, the plaintiffs' petition alleged, in substance, that gas accidentally escaped from pipes in the building and became accidentally ignited, resulting in an explosion in the steam boiler. As we read the record as abstracted there is no evidence of any escaping gas becoming accidentally ignited. On the contrary, what proof there is shows that after the explosion the assistant fire chief made an examination and found no gas leaks. The only direct evidence of any fire not under the boiler was that after the explosion, a small box in the boiler room was afire and was blazing up two or three inches. That this small fire, even if hostile, could have

712

produced an explosion in the boiler is not contended. The only other evidence tending to show there might have been a fire is the statement of Mr. Clingman and his wife that they saw a flash and heard the explosion and then the wall came in. They were not in a position where they could have seen the fire in the boiler room— they did not explain what they meant by flash, but it is apparent they either saw some reflected light through the rear door of their main room, or they referred to the blast of the explosion as a flash. Under all of the testimony there was but one sound of an explosion, and in view of the pleadings and the admissions the explosion heard was that of the steam boiler and not of exploding gas. Had the evidence showed two explosions it might then well be said that there was a first explosion caused by gas or some other cause and a second resultant explosion of the boiler, but giving the plaintiffs' evidence the benefit of all inferences, it may not be said there was proof of any escaping gas becoming accidentally ignited and causing an explosion of the steam boiler.

In *Redfield v. Chelsea Coal Co.*, 143 Kan. 480, 482, 54 P. 2d 975, it was said that a fact is not proved by circumstances which are merely consistent with its existence and that the rule was particularly in point where the only evidence directly on the question leads to a contrary conclusion, citing *Hendren v. Snyder*, 143 Kan. 34, 53 P. 2d 472, where there is a more complete statement. In the latter case it was held that a judgment predicated upon mere conjecture as to a defendant's negligence cannot be permitted to stand.

Even if it be assumed the evidence showed facts consistent with plaintiffs' claim of an explosion of escaping gas which ruptured the boiler, that same evidence showed facts equally consistent with defendants' claim that the boiler exploded from internal pressure. The evidence as to cause is circumstantial and not direct. In such case the circumstances relied on must be of such a nature and so related one to the other that the only reasonable conclusion to be drawn therefrom is the theory sought to be established. (*Cornwell v. O'Connor*, 134 Kan. 269, 271, 5 P. 2d 861.) It may further be observed that the explosion of the boiler having been admitted and there having been no showing of external force, it might well be concluded the boiler was ruptured by internal pressure. The evidence is not such that a conclusion to that effect may be declared as a matter of law. It does appear, however, that under the evidence it would be a mere conjecture which of the two assigned causes was

the real cause. When plaintiffs' evidence showed such a situation, they had not made the prima facie showing required.

In view of what has been said, we need not discuss the trial court's ruling on the motion of defendants for judgment in their favor.

We are of the opinion the trial court erred in overruling the demurrer of the defendants to the evidence of the plaintiffs. The cause is remanded with instructions to sustain the demurrer.